Anthony ROMANO, Plaintiff–Appellant,

v.

Kenneth HOWARTH, Michael Juron and Matthew Karkos, Defendants– Appellees.

No. 1425, Docket 92–2230.

United States Court of Appeals, Second Circuit.

Argued May 11, 1993.

Decided July 2, 1993.

Penny Shane, New York City (Tariq Mundiya, New York City, of counsel), for plaintiff-appellant.

Edward J. Curtis, Jr., Asst. Atty. Gen., State of New York (Robert Abrams, Atty. Gen., Ellen J. Fried, Asst. Atty. Gen., State of New York, of counsel), for defendants-appellees.

Before: MINER, McLAUGHLIN and FRIEDMAN,* Circuit Judges.

McLAUGHLIN, Circuit Judge:

Anthony Romano, a former prisoner, appeals from a judgment entered in the United States District Court for the Southern District of New York dismissing his civil rights action following a jury verdict in favor of the defendants. Romano brought this action under 42 U.S.C. § 1983 (1988), claiming that his Eighth Amendment rights were violated when corrections officers used excessive force to restrain him. Because we conclude that the special interrogatories submitted to the jury inaccurately framed the issues to be resolved, we reverse and remand to the district court for a new trial.

## BACKGROUND

Anthony Romano was an inmate in the custody of the New York State Department of Correctional Services, being treated in the Mental Health Unit ("MHU") of the Sullivan Correctional Facility in Woodbourne, New York. The medical staff in the MHU are employees of the New York State Office of

---

* The Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Mental Health; and the corrections personnel are employees of the Department of Correctional Services. Hence, to some Romano was a patient and to others, an inmate. The three defendants were corrections officers assigned to the MHU.

On April 19, 1986, Romano got into a quarrel with corrections officers over telephone privileges in the MHU day room. He became violent and was forcibly removed to a mental health observation cell where he remained for several hours, all the while ranting and demanding his release. That evening, the three defendants approached Romano's cell accompanied by MHU staff nurse Lori Hasbrouck, who intended to administer a sedative. Romano adamantly refused to accept the sedative.

The ensuing events are sharply disputed and are at the heart of this suit. Romano testified that Officer Howarth charged into the cell with a body shield, knocking Romano against the back wall of the cell. He also said that the defendants threw him to the ground, punched him in the jaw and stomped repeatedly on his hands. He claimed to have suffered bumps on his head, a dislocated finger, back pains and a bruised jaw.

Not surprisingly, the defendants and their witnesses recounted a much different story to the jury. They testified that when they entered the cell, Romano was cooperative, that he walked to his bed, lay face down and assumed the appropriate position to receive a sedative. Witnesses testified that the defendants held Romano in place by the wrists and ankles, even though Romano offered no resistance. Nurse Hasbrouck recorded in her log that the sedative was administered "without incident."

Although contemporaneous medical reports noted minor bruises and a "slightly deformed" finger, the defendants claimed that Romano had earlier inflicted those injuries upon himself when he repeatedly punched the walls of his cell before they entered. To support its version, the defense introduced into evidence Romano's psychiatric "Progress Notes," taken by a nurse at the MHU the day after the incident. In those notes, the nurse recorded an unidentified corrections officer's statement that Romano had admitted to that officer that he had indeed hurt his hand punching a wall. The exact entry in the notes is:

> CO [corrections officer] asked [Romano] "[H]ow is your hand?" [Romano] replied "[F]ine."... CO then asked "How did you hurt it?" [Romano] replied "I punched the wall."

The nurse who recorded the statement in the Progress Notes did not testify at trial. Although the record is far from clear, the parties have assumed that the unnamed officer who made that statement to the nurse was one of the defendants (because the defendants were the only officers on duty that day). Romano, of course, objected to the introduction of the officer's statement, arguing that it was hearsay and lacked sufficient trustworthiness to be admitted as a business record. *See* Fed.R.Evid. 803(6).

At the end of a four-day trial, the court gave the jury special interrogatories on a verdict form ("Verdict Form I") designed to focus on Romano's Eighth Amendment claim. Verdict Form I posed three questions as to each defendant:

1) Has the plaintiff proved by a preponderance of the evidence that force was used?

2) Has the plaintiff proved by a preponderance of the evidence that the force used was excessive or unreasonable as the Court has defined those terms?

3) Has the plaintiff proved by a preponderance of the evidence that the force used was applied maliciously and sadistically to cause harm and not in a good-faith effort to maintain and restore discipline?

In its charge, the court explained that question two addressed the "objective," and question three, the "subjective" components of the Eighth Amendment claim.

The jury answered *yes* to questions one and two, and *no* to question three. In other words, the jury found that the defendants' use of force had been "excessive or unreasonable," but that they had acted without malice.

The district court concluded that the jury's answers were inconsistent. Specifically, the

jury's answer to question three indicated its belief that the officers acted in good faith when they restrained Romano. But, said the court, the jury's affirmative answers to questions one and two indicated that it believed Romano's version of what happened in the cell. Because Romano's version was a violent altercation, the court was understandably hesitant to find that such a beating could ever be inflicted in good faith.

To resolve this apparent inconsistency, the court ordered the jury to resume deliberations, and furnished it with supplemental special interrogatories on a second verdict form ("Verdict Form II") that would elicit whether the jury's affirmative answers to questions one and two reflected the jury's belief in Romano's version of the events. Verdict Form II put the following questions as to each defendant:

1) Does your finding that excessive or unreasonable force was used reflect a finding that you accepted plaintiff's testimony as to what occurred on April 19, 1986?

. . . .

4) Does your finding that excessive or unreasonable force was used reflect only a finding that excessive or unreasonable force was used in the medication of plaintiff?

The jury answered *no* to question one and *yes* to question four. Satisfied that the jury disbelieved Romano's story that a beating occurred in the cell that day, the court entered judgment for the defendants and dismissed Romano's complaint.

Romano now appeals, challenging the formulation of the special interrogatories as well as the admission of the Progress Notes.

## DISCUSSION

### I. *The Special Interrogatories*

We start by noting that at no time did Romano raise a sufficiently articulate objection to apprise the trial court of what was erroneous about the interrogatories. We may reverse, therefore, only if we find plain error. Fed.R.Civ.P. 51. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct.

2445, 124 L.Ed.2d 662 (1993). Plain error has recently been defined by the Supreme Court to mean a "[d]eviation from a legal rule" that is "clear under current law," and that "affect[s] substantial rights." *United States v. Olano*, —— U.S. ——, ——––——, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993). "The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). We conclude that the errors here were plain error.

District courts have broad discretion under Rule 49(a) to formulate special interrogatories for submission to the jury. *See Ruggiero v. Krzeminski*, 928 F.2d 558, 561 (2d Cir.1991). Whenever a court chooses to use them, however, it must "give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue." Fed.R.Civ.P. 49(a). Accordingly, special interrogatories must be read "in conjunction with the district court's charge." *Cutlass Prods., Inc. v. Bregman*, 682 F.2d 323, 327 (2d Cir.1982). "We will reverse a judgment entered upon answers to questions which mislead and confuse the jury or which inaccurately frame the issues to be resolved by the jury." *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). Our analysis must begin, therefore, with the law applicable to Romano's claim.

The Eighth Amendment protects prisoners from "cruel and unusual punishment." *See Wilson v. Seiter*, —— U.S. ——, ——, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. 97, 102–05, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976). Thus, inmates have the right to be free from the "unnecessary and wanton infliction of pain" at the hands of prison officials. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The

Supreme Court has discerned that an Eighth Amendment claim comprises both an objective and subjective component. *See Hudson v. McMillian,* — U.S. —, — – —, 112 S.Ct. 995, 999–1000, 117 L.Ed.2d 156 (1992); *Wilson,* — U.S. at —, 111 S.Ct. at 2324.

Objectively, the plaintiff must establish that the deprivation alleged is "sufficiently serious," or "harmful enough," to reach constitutional dimensions. *See Wilson,* — U.S. at —, —, 111 S.Ct. at 2324, 2326. Hence, a *de minimis* use of force will rarely suffice to state a constitutional claim. *See Hudson,* — U.S. at —, 112 S.Ct. at 1000. As Judge Friendly recognized, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Here, no one contests the objective element of Romano's Eighth Amendment claim, and indeed, there can be no question that the beating Romano described was more than *de minimis.*

The subjective element of an Eighth Amendment claim plunges us into the state of mind of the defendant. *See Wilson,* — U.S. at — – —, 111 S.Ct. at 2324–26. Specifically, the jury must be persuaded that the defendant acted wantonly. *Id.* "[W]antonness does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" *Id.* — U.S. at —, 111 S.Ct. at 2326 (quoting *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). *Compare Estelle,* 429 U.S. at 104, 97 S.Ct. at 291 (wantonness in challenge to inadequate medical treatment is "deliberate indifference" by prison officials); *and Wilson,* — U.S. at — – —, 111 S.Ct. at 2326–27 (wantonness in challenge to prison conditions is "deliberate indifference"); *with Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85 (wantonness in challenge to force used during a prison riot is "malicious and sadistic" behavior).

Romano's complaint is that the defendants used excessive force when they restrained him to allow a nurse to administer a sedative. Whenever an inmate's Eighth Amendment claim alleges excessive force, wantonness turns upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* — U.S. at —, 112 S.Ct. at 999. To determine whether the defendants acted maliciously, a jury should consider the following factors: the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. *Id.* (citing *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085). If an evaluation of these factors leads the jury to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the jury to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

That said, we turn to the interrogatories submitted to Romano's jury to determine whether, coupled with the charge, they fairly and accurately framed the issues in this case. We conclude that they did not.

### A. *Verdict Form I:*

Questions two and three of Verdict Form I misfocused the constitutional inquiry and were doomed to confuse the jury, particularly when read against the backdrop of the accompanying charge. Question three asked the jury whether the defendants acted maliciously and sadistically, and not in a good-faith effort to maintain and restore discipline. Obviously, this question was designed to elicit whether Romano had satisfied the subjective intent standard of *Whitley* and *Hudson.* "Often, of course, there will be no evidence of the [officers'] subjective intent, and the trier of fact must base its determination on objective factors suggestive of intent." *Valencia*

*v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993). Here, however, the court's charge failed to address adequately such objective factors. *See* Fed.R.Civ.P. 49(a).

The court's instruction on malice, in its entirety, was as follows:

There is a subjective component there as to what they in good faith believed. In deciding that question, bear in mind that the Eighth Amendment only forbids punishment which is inflicted wantonly and with a deliberate disregard for the rights of the person involved. Therefore, punishment which is inflicted with a good faith belief that it is reasonably necessary to restore discipline or to protect the officers is not a violation of the Eighth Amendment. It is only that punishment which is inflicted sadistically and with an intention to inflict harm, and not in a good faith belief that it is necessary to maintain discipline and protect the officers, that rises to the level of an Eighth Amendment violation. . . .

You have to look to all of the surrounding circumstances in deciding whether or not these officers acted in the good faith belief that I described to you, or wantonly and deliberately and recklessly with indifference to the rights of the plaintiff, using whatever force you find was used.

We find that this instruction failed to provide the jury sufficient objective criteria from which it could infer maliciousness. The instruction should have focused the jury's attention on the factors set out in *Whitley* and *Hudson,* and explained how to use those factors to arrive at a conclusion regarding the defendants' state of mind. *See Cummings v. Malone,* 995 F.2d 817, 821 (8th Cir.1993) (instructions in Eighth Amendment excessive force cases must adequately guide jury on defendant's intent). An instruction simply to "look to all the surrounding circumstances" is deficient.

■ Question two of Verdict Form I asked whether the force used on Romano was "excessive or unreasonable." The court's charge on excessiveness, in its entirety, was as follows:

When you decide whether or not force is excessive or unreasonable, you don't make a hindsight judgment as to that. You don't decide that issue from your perspective as a juror two or three or four years later. You have to decide what was excessive or unreasonable as the circumstances appeared to the correction officers at the time. You have to look to all of the surrounding circumstances on those issues in deciding whether or not what they did was excessive or unreasonable. You are not a Monday morning quarterback. You have to look at it from their point of view and decide whether or not the force they used was excessive or unreasonable, given all the surrounding circumstances that presented themselves to the correction officers involved on the day in question.

We find this explanation inadequate to explain the role that excessive force plays in the determination of liability.

Excessive force does not, in and of itself, establish malice or wantonness for Eighth Amendment purposes. *See Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 ("The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."). Rather, it is but one factor—albeit an important one—that enters into the jurors' determination as to whether the defendants acted maliciously. *See Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085 ("From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."). If, for example, the force used on Romano massively exceeded what was necessary to restrain him, this could support a jury verdict that the defendants acted maliciously. If, alternatively, the force was appropriate or only marginally excessive under the circumstances, then the jury could rea-

sonably infer that the defendants acted in good faith.

In sum, Verdict Form I improperly suggested that "excessive force" and "maliciousness" were two separate, but equal, inquiries; under Eighth Amendment jurisprudence, however, the former is simply a factor to be considered by the jury in its determination of the latter. *See Cummings*, 995 F.2d at 822 (reversible error for jury instruction to list "malicious and sadistic" intent as "one factor among several" in determining excessive force: "Such an instruction does not present the malicious and sadistic standard as the jury's core inquiry, and thus does not meet the requirements of *Whitley* and *Hudson*."). Thus, question two should have been folded into question three rather than being made a discrete inquiry on a par with question three.

### B.  *Verdict Form II:*

The special interrogatories submitted on Verdict Form II, unfortunately, do not rescue this verdict. Question one of Verdict Form II asked whether the jury's answers to Verdict Form I indicated that it had accepted Romano's "testimony" as to the events in the cell. We find this question to be misleading and confusing. Specifically, it is unclear whether the question sought to elicit whether the jury accepted *all*—or just *some*—of Romano's testimony.

The jury's confusion became manifest during the resumed deliberations when the jury sent out a note asking whether and how to apply the "preponderance of the evidence" standard to a question that asked if the jury accepted Romano's "testimony." The court elaborated:

> What we are trying to find out is if your finding accepts by a preponderance of the evidence the truth of the plaintiff's version of what happened in the cell. I am not particularly concerned with whether or not you accept other portions of his testimony about what happened before and after, the telephone, etc. I am focusing on plaintiff's allegation that certain conduct occurred within the cell. *What I am trying to find out is whether you accepted his version of the facts of what occurred rather than what you heard on the other side....*

> I want to know whether or not, in making your finding, you accepted as true by a preponderance of the evidence his version of what occurred within the cell.... If the answer to that question is no, then you go to question 4, which deals with the alternative finding you could have made, which is: Did you just find that there was only the use of unreasonable force in medicating him?

(Emphasis added).

This explanation suggests that the jury had to accept the plaintiff's testimony *in its entirety*, or the defendants' testimony *in its entirety*, in order to resolve this dispute. The truth, however, may, and often does, lie somewhere in between the divergent accounts; the jury's discretion to explore the middle ground should have remained unfettered. In this case, for example, the jury could have rejected the defendants' version that *no* force was used, but also have rejected many of the details described by Romano.

Finally, the jury's affirmative answer to question four of Verdict Form II did not help to resolve any issue in the case. That question asked whether the jury's "excessive or unreasonable force" finding in Verdict Form I reflected "only" its view that such force was used "in the medication of the plaintiff." This inquiry is at best chimerical since there was no dispute that if force was used, it was used in what could be described as "the medication of the plaintiff."

In sum, Verdict Form II failed to redeem Verdict Form I, and it is apparent that the jury was utterly confused by both forms. A new trial is required.

## II.  *Admissibility of the Progress Notes*

Because we are ordering a new trial, we also address the admissibility of the Progress Notes, as this issue will most certainly be revisited.

Over Romano's objection, the district court admitted into evidence a conversation Romano had with a corrections officer, recorded in the Progress Notes, in which he admitted to having injured his own hand punching the walls of his cell. Romano ar-

gues that this evidence was hearsay and should have been excluded. We agree.

Although Romano's admission itself is not hearsay, *see* Fed.R.Evid. 801(d)(2), the officer's statement to the nurse and the nurse's record of that statement are hearsay and can only be admitted as exceptions to the hearsay rule. The defendants argue, and the district court found, that the officer's statement to the nurse was admissible under the business records exception of Fed.R.Evid. 803(6). Under that rule, a report prepared from information "transmitted by" a person "with knowledge" may be admissible if that report was kept in the course of a "regularly conducted" activity, and if it was the "regular practice" of the institution to make such a report. Fed.R.Evid. 803(6). Such records may be excluded, however, if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.*

The parties do not dispute that an MHU nurse would be under a business duty to record details of Romano's behavior in the Progress Notes. The nurse's business duty, however, ensures only the accuracy of her notes; it is no guarantee at all of the accuracy of the information supplied by the officer. *See* Fed.R.Evid. 803(6) advisory committee's note ("If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail."); *cf. In re Leon RR*, 48 N.Y.2d 117, 122, 397 N.E.2d 374, 377, 421 N.Y.S.2d 863, 867 (1979) ("not only must the entrant be under a business duty to record the event, but the informant must be under a contemporaneous business duty to report the occurrence to the entrant as well"). Because the Progress Notes contain this additional level of hearsay, another link in the hearsay chain is necessary to usher into evidence the officer's statement to the nurse. *See* Fed.R.Evid. 805.

The defendants maintain that the business records exception also covers the officer's statement to the nurse as well. We cannot agree. First, it is unclear from this record what business relationship, if any, existed between the corrections staff and the medical staff at the MHU such as to ensure the accuracy of the officer's account of his conversation with Romano. *See, e.g., Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15–16 (2d Cir.1989) (per curiam) (error to admit first-aid report containing statement by person with no business duty to report to the record entrant). Second, and more significantly, even if the defendants could establish that the officers had a business duty to report accurately to the nurses, there is still a dark cloud hovering over this particular business record: the officer's motive to fudge the truth of what really happened in Romano's cell.

"The principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Saks Int'l, Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir.1987). Here, the parties agree that the officer who reported the conversation had to have been one of the defendants. Moreover, it is undisputed that Romano had threatened to blame his injuries on the officers and that the officers were aware of Romano's threat. Under these circumstances, and given the less than impressive foundation laid by the defense for its admission, we are not convinced that the officer's statement carries with it the requisite degree of trustworthiness essential to the business records exception. *Cf. Bracey v. Herringa*, 466 F.2d 702, 704–05 (7th Cir.1972) (defendant prison guard's report containing characterization of plaintiff inmate as "completely out of control" at time of alleged beating lacked trustworthiness). Accordingly, the statement should have been excluded.

## CONCLUSION

The judgment of the district court is reversed and the matter remanded for a new trial.