Ian DAWES, Plaintiff,

v.

Thomas A. COUGHLIN, Commissioner; Security Deputy Duffany; Sgt. J. Milteer; Sgt. R. Butler; C.O. Delgaizo; C.O. Maloney; C.O. Southard; C.O. Hollingshead; P.A. Cynthia Zeeb; C.O. Minuck; C.O. Schaller; in their individual and official capacities, Defendants.

No. 92–CV–0182.

United States District Court, N.D. New York.

May 21, 1997.

Chernin, Gold Law Firm, Binghamton, NY (Sanford Tanenhous, of counsel), for Plaintiff.

Dennis Vacco, General of the State of New York, Albany, NY (Terrance X. Tracy, Assistant Attorney General, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAvoy, Chief Judge.

## I. BACKGROUND

The Court conducted a two day bench trial in the above captioned case which commenced on February 18, 1997. The plaintiff, Ian Dawes, pursuant to 42 U.S.C. § 1983, alleges that the defendant violated his constitutional rights by subjecting him to malicious prosecution, to excessive force on more than one occasion, by failing to provide medical treatment, and by improperly issuing restraint orders ("RO") and deprivation orders ("DO"). The defendants deny any unconstitutional conduct, and claim that they are qualifiedly immune from prosecution with respect to the RO's and DO's.

The defendants made a motion pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law as to all claims. The Court granted the defendants' motion as to the malicious prosecution claim and as to all claims asserted against the defendant Coughlin. The motion was in all other respects denied.

The Court notes that during the trial, the plaintiff testified and called a single witness, who contradicted much of the plaintiff's testimony relating to a November 6, 1991 incident. The defendants called a number of witnesses who corroborated each others' testimony.

## II. FINDINGS OF FACT

1. The plaintiff, Ian Dawes, was an inmate at the Eastern Correctional Facility, housed in the Special Housing Unit ("SHU"), at all times relevant to this case. The defendants, with the exception of Cynthia Zeeb, a nurse, were corrections officers at Eastern at all times relevant to this case.

2. The plaintiff was involved in an incident on November 6, 1991. On that date, the plaintiff was directed by defendants Butler and Delgaizo, corrections officers at Eastern, to proceed to the library of the SHU. While being escorted to the Library, and while in the hallway of SHU, the plaintiff spat on defendant Butler and uttered insults and threatening words directed at Butler. The plaintiff, who was in full restraints, also attempted to kick defendant Delgaizo. With the assistance of defendants Southard and Maloney, two other corrections officers who heard the disturbance, the defendants brought the plaintiff to the ground and secured him on the floor until the he calmed down. During the disturbance, the plaintiff received a cut over his left eye, redness over his right eye, and a swollen lip. After the plaintiff calmed down, he was escorted back to his cell.

3. The plaintiff claims that as he was leaving a hearing at which he had testified, and while in the hallway of the SHU, defendants Butler and Delgaizo said intimidating statements to him, prompting the plaintiff to respond violently to show that he could not be intimidated. Other officers arrived. The plaintiff then claims that he was kicked and punched in the face and mid-section by the officers. The plaintiff's only witness, Timothy Dunston, a fellow inmate at Eastern,

stated that the plaintiff, prior to testifying at a hearing, was beaten by the defendant Butler in the hearing room, while Dunston was present. The witness' testimony is inconsistent with the testimony of any other witness, and is deemed by the Court as incredible. The plaintiff's testimony is completely uncorroborated.

4. After the incident, and on the same day, the plaintiff was examined by a nurse, Ms. Bluestone. The nurse observed a one inch cut over the plaintiff's left eye, an inside cut to the plaintiff's lower lip, swelling of the lower lip, and redness over the right eye. The nurse also recalled that the plaintiff complained of rib pain, although there were no outward signs of injury. The cut over the plaintiff's left eye did not require stitches. The cut was dressed with a bandage, and the plaintiff was given ice for his lip. The nurse requested a precautionary X-ray for the plaintiff's ribs, and scheduled a doctor's visit for the next day.

5. Just after being examined, and in the presence of the nurse, the plaintiff requested removal of his leg restraints. When one leg shackle was removed, the plaintiff attempted to kick the officer removing the shackles, an officer Smith, and spit on him. The plaintiff claimed that the officer attempted to injure the plaintiff while removing the shackles by twisting them and gouging them into the plaintiff's ankles. It the plaintiff's contention that this twisting prompted his violent outburst. Again, the plaintiff's testimony is completely uncorroborated.

6. The plaintiff's X-ray was not performed for nearly two months. On the day following the incident, the plaintiff was reported as belligerent, assaultive, and combative, and was denied a visit to the doctor. However, it was noted in the plaintiff's file that he would be brought to the doctor for an examination if the plaintiff made a specific complaint about his health. On four subsequent occasions, the plaintiff failed to show up for X-rays. No reason was given to the nurse. However, the defendant officers testified that the plaintiff was denied access to the nurse because he continued to pose a threat to the Eastern staff. The X-rays that were finally taken did not reveal any damage to the rib cage area.

7. The plaintiff's cell was fitted with a "feeder box" which limits inmate/officer contact. For example, a tray is placed into the box, rather than directly into the hands of an inmate. The box is used in connection with violent or abusive inmates.

8. On November 7, 1991, while the defendant Hollingshead was attempting to retrieve a meal tray, after dinner, from the plaintiff's feeder box, the plaintiff grabbed Hollingshead's left arm and pulled it through the opening in the cell door. As Hollingshead struggled with the plaintiff and attempted to remove his arm, the plaintiff removed Hollingshead's watch. Hollingshead slammed the door to the feeder box shut. The plaintiff claimed that his fingers were scraped during the incident, and that he was not fed that evening. The defendant Hollingshead's version of the incident is corroborated by a fellow officer, Mr. Reynolds.

9. The plaintiff admitted to a struggle involving Hollingshead, but claims that Hollingshead, without provocation, thrust his baton through the feeder box into the plaintiff's cell, and, waiving it around, hit the plaintiff multiple times. The plaintiff claims to have sustained a laceration to his elbow and an unspecified injury to his fingers as a result. A subsequent examination by the nurse confirmed that the plaintiff had a scrape on his elbow and no visible injury to his fingers. The plaintiff admits to later crushing Hollingshead's watch, and flushing it down the cell toilet. The plaintiff's version of the incident is incredible and uncorroborated.

10. On November 7, 1991, defendant Hollingshead prepared an inmate misbehavior report charging the plaintiff with violating Inmate Statewide Rules 100.11 and 116.13. The plaintiff was found guilty of the charges set forth in the misbehavior report at a Tier III disciplinary hearing held on November 20, 1991. The decision was affirmed on January 23, 1992, after an administrative appeal.

11. On November 8, 1991, defendant Hollingshead swore out a felony Complaint which charged the plaintiff with committing

an assault in the second degree, on the previous day. The plaintiff was convicted of committing disorderly conduct on February 10, 1992, and sentenced to fifteen days, to run concurrent with the sentence he was then serving.

12. The defendant Milteer and other officers sought restraint orders against the plaintiff, stemming from threatening or abusive conduct, including but not limited to verbal threats against officers, banging of objects in a threatening manner in his cell, the attempted striking of corrections officers with objects, and spitting on officers. Pursuant to NYS Department of Correctional Services Directive 4933, restraint orders may be issued for no more than seven days, and can be renewed. Each request was approved by defendant Duffany, Acting Deputy Superintendent of Security Smith, or Lieutenant McClay. Restraint orders were requested, and or continued, for the time periods: October 1, 1991 through October 8, 1991(violent conduct and threats toward staff); October 8, 1991 through October 15, 1991 (same); October 29, 1991 through November 5, 1991 (same and banging on cell door and refusing to obey order to stop); November 5, 1991 through November 12, 1991 (same); November 12, 1991 through November 19, 1991 (same and spitting on sergeant and officer); November 19, 1991 through November 26, 1991 (same); November 26, 1991 through December 2, 1991 (same and removal of officer's watch and flushing of watch down toilet); and December 2, 1991 through December 8, 1991 (same and constant harassment of staff).

13. Defendant Duffany and Acting Deputy Superintendent of Security Smith issued orders, pursuant to Directive 4933, depriving plaintiff of all out of cell activities on the following dates: October 29, 1991 (threats toward staff, violent kicking of cell door, banging door of cell with trash can); October 31, 1991 (same and threat to throw urine and feces on staff); November 2, 1991 (threats and violent kicking of door in support of another inmate); November 4, 1991 (same); November 5, 1991 (same); November 6, 1991 (assaultive behavior); November 9, 1991 (spitting, kicking, biting, and threatening SHU staff); and November 12, 1991 (threats and assaults on staff). On November 30, 1991, defendant Duffany issued an order depriving the plaintiff of his ability to obtain a shower. Deprivation orders are effective for one day.

## III. CONCLUSIONS OF LAW

### A. Excessive Force Claims

1. The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993), citing, *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The core inquiry for the Court in assessing a prisoner's claim that prison officials used excessive force in violation of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992).

2. An inmate claiming that prison officials subjected him to cruel and unusual punishment by the use of excessive force has the burden of establishing both an objective and a subjective component. *Romano,* 998 F.2d at 105. Objectively, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Id.* This component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson,* 503 U.S. at 2, 112 S.Ct. at 996, *quoting, Estelle v. Gamble, supra,* 429 U.S. at 103, 97 S.Ct. at 290. Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, the plaintiff is not required to show that the application of force resulted in serious injury. *Id.* 503 U.S. at 7–9, 112 S.Ct. at 999–1000.

3. Subjectively, the plaintiff must show that the defendants acted wantonly. More specifically in the context of an Eighth Amendment "excessive force" claim, the plaintiff must show that the defendants acted

"maliciously and sadistically to cause harm .... " *Id.* at 7, 112 S.Ct. at 999; *Romano,* 998 F.2d at 105. To determine whether the defendants acted maliciously, the Court, as trier of fact, should consider the following factors: the extent of the plaintiff's injuries, the need for the application of force, the correlation between the need for force and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made by the defendants to temper the severity of a forceful response. *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). As stated by this Circuit in *Romano* :

> If an evaluation of these factors leads the [trier of fact] to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the [trier of fact] to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

998 F.2d at 105.

■ 4. As to the November 6, 1991 incident, the plaintiff sustained a cut over his left eye, and a swollen lip and right eye as a result of the force levied against him. The force was applied after the plaintiff spat on an officer, attempted to kick an officer, and in general, while outside his cell, violently refused to comply with a direction to proceed to the SHU. The plaintiff was taken to the ground, and held until he calmed down. There is no substantiation, either by witnesses or by the nurse who examined the plaintiff subsequent to this incident, to the plaintiff's claims that he was repeatedly kicked and punched by the four officers who subdued him. There is no evidence to suggest that the force continued after the plaintiff calmed down.

5. The Court concludes that the defendants did not use excessive force against the plaintiff on November 6, 1991, during the struggle that erupted following the plaintiff's refusal to obey an order to proceed to the SHU library at Eastern.

■ 6. As to the November 7, 1991, incident involving the defendant Hollingshead and the plaintiff, and the struggle with the food tray, the Court has found that the plaintiff initiated a struggle with the defendant. The Court has also found that the plaintiff grabbed the defendant's arm and, during the struggle, removed the defendant's watch, which he later destroyed and flushed down the toilet. The defendant sustained an injury. The plaintiff claims to have sustained a laceration on his elbow, and scrapes on his fingers as a result of the struggle with defendant Hollingshead. Although the nurse who subsequently examined the plaintiff noted a scrape on the plaintiff's elbow, it did not require a bandage. The nurse found no visible injury to the plaintiff's fingers. There is no substantiation to the plaintiff's version the initiation and conduct of the struggle with Hollingshead. Moreover, the plaintiff's version of events, that the defendant reached into the cell with his baton and struck the plaintiff numerous times, is beyond belief.

7. The Court concludes that the force used by defendant Hollingshead, on November 7, 1991, during the struggle with the plaintiff, resulting in the closing of the feeder box "door" on the plaintiff's fingers was not excessive.

### B. Refusal to Provide Medical Care

■ 8. To establish a denial of medical care claim violative of the Eighth Amendment, a prisoner must prove that the defendants acted with "deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *quoting, Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* This standard contemplates "a condition of urgency, one that may produce death, degeneration or extreme pain." *Id.* (citation omitted). Furthermore, plaintiff must allege that the charged officials acted with the culpable state of mind of deliberate indifference. Deliberate indifference exists when there are " 'intentional efforts ... to delay [plaintiff's] access to medical care at a time when [ ]he was

in extreme pain[,]' and has made his medical problems known 'to the attendant prison personnel[,]' of 'complete denial' of medical treatment, or of a 'reckless or callous indifference to the . . . safety of . . . prisoners.'" *Harding v. Kuhlmann,* 588 F.Supp. 1315, 1316 (S.D.N.Y.1984) (alterations in original) (footnotes and citations omitted), *aff'd,* 762 F.2d 990 (2d Cir.1985).

9. The Plaintiff has claimed that the defendants deprived him of medical care in violation of his Eighth Amendment rights by failing to X-ray his ribs for nearly two months following the November 6, 1991 incident. However, the evidence at trial established that the plaintiff was examined fully following the incident. Nurse Bluestone did not observe any injury to the plaintiff's rib cage area. The Nurse prescribed Tylenol for the pain, and scheduled an x-ray. The plaintiff was denied his x-ray for the reason that he continued to act in a threatening and offensive manner toward the Eastern staff. SHU officers confined the plaintiff to his cell for security and safety reasons. X-rays were scheduled on four occasions, and the plaintiff missed each one, as a result of being restrained for assaultive and combative behavior. Finally, the plaintiff was X-rayed. The X-ray revealed no current or past damage to the plaintiff's ribs.

10. The Court finds that the plaintiff failed to establish that his medical needs were sufficiently serious to rise to the level of a constitutional violation.

### C. Issuance of Restraining Orders and Deprivation Orders

11. Pursuant to Directive 4933, a deprivation order may be issued "when it is determined that [an inmate poses] a threat to the safety or security of staff, inmates, or State property." Such orders are reviewed daily by the Deputy Superintendent for Security Services. Pursuant to that same Directive, "[a]ny inmate assigned to a SHU who has displayed a history of assaultive behavior and/or who presents a threat to the safety or security of him/herself, other persons, or State property may be placed under a restraining order." Such orders are valid for no more than seven days.

12. It has been held that the daily review of deprivation orders,[1] the availability of the inmate grievance program,[2] and the fact that an inmate has a judicial remedy to challenge deprivation orders, and restraining orders, under CPLR article 78 clearly provide due process of law. *See Bogle v. Coughlin,* 173 A.D.2d 992, 993, 569 N.Y.S.2d 831, 832 (3d Dep't 1991). There was no evidence that the DO's were not reviewed daily, nor was there any evidence placed before the Court that the RO's were continued for more than seven days without review. The defendants complied procedurally with Directive 4933. Thus, the Court can find no evidence that the plaintiff was denied due process.

13. As to the Eighth Amendment aspect of the plaintiff's challenge to the DO's and RO's, as stated previously, such orders are permissible to prevent a threat to the safety or security of staff, inmates, or State property. Such orders are not authorized as disciplinary measures. *See, e.g. Trammel v. Coombe,* 170 Misc.2d 471, 649 N.Y.S.2d 964, 967 (Sup.Ct. Westchester County 1996). The plaintiff's chief concern with the orders is that they result in limited recreation, to wit, one hour at a time in full restraints. The propriety of denying prisoners all exercise has been questioned. *See Krist v. Smith,* 309 F.Supp. 497, 501 (S.D.Ga.1970). However, granting only a single hour per day has been held in this Circuit to be constitutional. *See Anderson v. Coughlin,* 757 F.2d 33, 36 (2d Cir.1985).

14. Under the facts of this case, although the plaintiff was restrained during his exercise period, he was able to move around in the recreation area. Moreover, this Court can see no constitutional deprivation when prison officials deem it necessary to restrain an inmate during a recreation period for security and safety purposes. The factual bases for the deprivations and restraining orders were set forth in the documents themselves. The Court concludes that

---

**1.** *See* 7 NYCRR 305.2(c).

**2.** *See* 7 NYCRR 304.14.

the RO's and DO's issued against the plaintiff were properly issued, and caused no constitutionally significant deprivation of the plaintiff's Eight Amendment rights.

## IV. CONCLUSION

For the reasons stated herein, the Court finds for the defendants as to all claims asserted by the plaintiff, Ian Dawes.

**IT IS SO ORDERED.**