Rederick E. CUMMINGS, Appellee,

v.

Robert MALONE; Harry Lloyd, Cpt.; James Eberle, Defendants,

Michael L. Plemmons; Scott L. Lawson, Appellants,

Tony Lander; Steve Lingo, CO; George Adams; David Corum; Gary Blank; Phillip Vance; Arthur W. Dearixon; James Bohannon; Richard Corser; Lewis Foxworth; William L. Rutledge; Louis Ferguson, Defendants.

No. 92–2699.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1993.

Decided June 9, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied July 19, 1993.

Michael Pritchett, Jefferson City, MO, argued, for appellant.

There was no argument presented on behalf of the appellee.

Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Michael Plemmons and Scott Lawson (collectively appellants) appeal from the judgment entered upon a jury verdict finding them liable for violating the Eighth Amendment rights of appellee Rederick Cummings and awarding nominal damages to Cummings. Appellants claim that the district court erred (a) by improperly instructing the jury on the mental state necessary to prove an Eighth Amendment violation and with respect to nominal damages, and (b) by failing to admit certain evidence. Appellants also appeal the award of attorneys' fees to Cummings. We reverse and remand for a new trial, and vacate the award of attorneys' fees.

## I. BACKGROUND

The parties presented diametrically opposed accounts of the events leading to this lawsuit. Because the facts are important to the resolution of the issues on appeal, we set out the contentions of both parties in detail.

Cummings, an inmate within the Missouri Department of Corrections, asserted that several prison officials violated his right to be free from cruel and unusual punishment by beating him at various times and in various combinations on March 24, 1989, while he was confined at the Missouri State Penitentiary (MSP). Named as defendants in Cummings' final amended complaint were Maj. James Eberle, Capt. Gary Blank, Capt. George Adams, Capt. Harry Lloyd, Lt. Robert Malone, Lt. Phillip Vance, Lt. Michael Plemmons, Lt. James Bohannon, Sgt. David Corum, CO-1 Scott Lawson, CO-1 Tony Lander, CO-1 Steve Lingo, CO-1 Lewis Foxworth, Bill Rutledge (an assistant superintendent), Arthur Dearixon (an investigator), and Lois Ferguson (a nurse).

At trial, Cummings testified that on March 24, 1989, an officer instructed him to go to the captain's shack. When he arrived at the captain's shack, defendants Plemmons, Lawson, and two or three other officers were already there. Cummings then complied with a request to be strip searched. Cummings denied striking defendant Plemmons or attempting to strike defendant Blank at that time.

After the strip search, defendants Lawson and Plemmons escorted Cummings to the major's office. Major Eberle met them there and escorted Cummings into a file room adjacent to the office. Cummings claims that while in the file room he was beaten for about five to seven minutes by defendants Eberle and Adams, who also made racially derogatory comments toward Cummings. Cummings then was taken to the investigator's office, where he was beaten for approximately twenty minutes by numerous correction officers, primarily defendants Eberle, Adams, Corum and Vance. Investigator Melvin Coonce was present during this beating but did not participate. At one point during the beating, defendant Ferguson, a nurse, came into the investigator's office, but did not examine Cummings.

Cummings then left the investigator's office and was taken to Housing Unit 5C. There he claims he was beaten by defendants Malone, Lander, and Lingo for about five to seven minutes.

Later that day, Cummings was taken to the major's office to be informed of certain conduct violations. Cummings testified that after he arrived, he was beaten again for approximately twenty to twenty-five minutes. Defendants Eberle, Blank, Lawson, Plemmons, and Lloyd were present at that time, as was investigator Melvin Coonce. Cummings testified that at no time during any of these beatings did he offer any resistance.

Melvin Coonce, a former investigator at MSP, testified for Cummings. He testified that in March 1989, Cummings was escorted to his office by defendants Eberle, Plemmons, and a couple of other officers. Coonce testified that those officers beat Cummings in his office, and that defendant Dearixon came into his office later and joined the beating.

Later that day, Cummings was brought to the major's office so that Coonce could interview him about alleged conduct violations. Defendants Eberle, Plemmons, Blank, and Lawson were present. Corrections Officer Kim Turner also was present, as well as several other officers Coonce could not recall. Several people left the room and shut the door, and then defendants Eberle, Plemmons and Lawson struck Cummings.

Defendants' evidence showed the following circumstances relevant to this case. On March 24, 1989, officers received a report that Cummings had committed a major conduct violation. Defendant Adams instructed Plemmons and Lawson to pick up Cummings, who they located and escorted to the captain's shack. Defendant Blank met them there. Plemmons told Cummings that he was going to be strip searched, and Cummings asked why. When Plemmons told him, Cummings hit him in the face. Cummings then swung at Blank, who ducked and hit Cummings in the mouth, cutting his finger in the process. Blank and Lawson then took Cummings to the floor and put him in hand restraints.

Following this altercation, Blank, Plemmons, and Lawson escorted Cummings to the investigator's office, where Eberle joined them. Before arriving at the investigator's office, Blank went to the rest room to care for his bleeding hand. Adams and investiga-

tor Melvin Coonce were waiting at the investigator's office when Cummings and escorts arrived. Plemmons and Lawson remained at the investigator's office for about ten minutes and then Lawson escorted Plemmons to the hospital on orders of Eberle and Adams. Plemmons began receiving treatment at the hospital at 9:30 a.m., and remained at the hospital for about one hour and fifteen minutes. Lawson remained with Plemmons during this time. Eberle stayed in the investigator's office for about three or four minutes before returning to his office, while Adams stayed in the investigator's office for about ten minutes before returning to his assigned duties.

Just before Adams left, Ferguson, a nurse, reported to the investigator's office to examine Cummings for injuries resulting from the use of force at the captain's shack. Ferguson asked Cummings what injuries he had suffered, and Cummings replied that he had none. According to Ferguson, Cummings had no visible injury other than a cut lip. Cummings then signed a waiver stating that he refused medical treatment, and was taken to Housing Unit 5C.

Later that day, Cummings was brought to the major's office for an interview on a conduct violation Plemmons had issued him. Investigator Coonce was present to conduct the interview. Eberle was present at first, but left when the interview began. Plemmons and Turner were in an adjoining room where they could view and hear the interview. After the interview, Lawson escorted Cummings back to Housing Unit 5C.

Defendants and their witnesses consistently testified that Cummings was not physically or verbally abused in any way. They testified that the only force directed at Cummings was that used by Blank and Plemmons after Cummings had hit Plemmons and swung at Blank in the captain's shack. Defendants further testified that Dearixon, Corum and Vance had no contact at all with Cummings on March 24, 1989, and that Dearixon was not even at the prison that day.

Much of the controversy in this case concerns what the jury did not hear, however. The appellants sought to introduce, through

testimony from Plemmons, Lawson, and prison employee Kim Turner, that Cummings was initially picked up for interrogation because Turner alleged Cummings attempted to sexually assault her. The district court excluded this evidence, finding that it was irrelevant and highly prejudicial.

Appellants attempted to introduce this evidence and other evidence of Cummings' malfeasance on March 24 in several other ways. First, appellants attempted to introduce for impeachment purposes the "face sheet" listing Cummings' felony convictions, which included his conviction for assaulting Plemmons and for attempting to rape Turner on March 24. The district court allowed defendants to question Cummings about the number of his felonies, but did not allow them to use the "face sheet" to dispute his answer. Appellants further attempted to introduce Cummings' assault and attempted rape convictions to impeach Cummings' testimony that he was not violent toward anyone on the day he claims he was assaulted. Second, the appellants attempted to introduce the fact that Plemmons and Blank testified against Cummings in the assault trial to establish Cummings' bias against them. The district court allowed appellants to establish that two defendants had testified against Cummings, resulting in a criminal conviction and fifteen more years in prison, but would not allow the appellants to establish which defendants testified or what the charge was. Finally, appellants attempted to introduce Cummings' prior deposition and initial pro se complaint as prior inconsistent statements to impeach Cummings' testimony that he did not know why he was initially called down for interrogation. In these documents, Cummings states he was told that he was called down because Turner alleged he sexually assaulted her. The district court did not allow defendants to introduce these documents.

At the close of the evidence, Cummings submitted to the jury claims that Dearixon, Eberle, Adams, Plemmons, Lawson, Corum and Vance violated his right to be free of cruel and unusual punishment by using excessive force against him. The jury returned verdicts in favor of all defendants except Plemmons and Lawson. The jury found these two defendants liable, and awarded Cummings nominal damages of one dollar against both Plemmons and Lawson.

## II. DISCUSSION

### A. Jury Instruction on Eighth Amendment Liability

■ The appellants initially contend that the district court erred in instructing the jury on the mental state necessary to prove an Eighth Amendment violation. Specifically, they claim that the court failed to require that the jury find they acted "maliciously and sadistically for the very purpose of causing harm."

The verdict directing instruction as to each defendant provided that:

Your verdict must be for plaintiff and against defendant [ ] for violation of plaintiff's right to be free from cruel and unusual punishment if all the following elements have been proved by the preponderance of the evidence:

First, defendant beat plaintiff, and

Second, the use of such force under the circumstances was excessive and constituted the unnecessary and wanton infliction of pain on plaintiff; and

Third, as a direct result, plaintiff was damaged.

If any of the above elements has not been proved by the preponderance of the evidence, then your verdict must be for defendant.

Instruction No. 10. The court further instructed the jury that:

In determining whether the force, if any, as used in these instructions, was excessive, you must consider such factors as the need for the application of force that was used, the extent of the injury inflicted and whether the force was applied in [sic] good faith effort to achieve a legitimate purpose or maliciously for the very purpose of causing harm.

Instruction No. 16.

The court rejected the defendants' requested verdict directing instruction, which required the jury to find that the defendants

inflicted force maliciously and sadistically to cause harm.

◼ We review jury instructions as a whole to determine whether they fairly and adequately instruct the jury as to the substantive law. *Tioga Pub. Sch. Dist. v. United States Gypsum Co.*, 984 F.2d 915, 923–24 (8th Cir.1993); *Jones v. Board of Police Comm'rs*, 844 F.2d 500, 504 (8th Cir.1988), *cert. denied*, 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 990 (1989). We believe that these instructions do not correctly state the law of Eighth Amendment liability. The Supreme Court has held that in every case alleging an Eighth Amendment violation through the use of excessive force, the jury must consider " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). These jury instructions do not require the jury to find this standard was met before imposing liability.

First, the verdict director sets out the standard as whether the force constituted the "unnecessary and wanton infliction of pain on plaintiff." This standard does not adequately guide the jury because, as the Supreme Court has noted, "unnecessary and wanton infliction of pain" varies with the circumstances: in some cases (e.g., failure to provide medical care, *see Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)), the plaintiff must show the defendant acted with deliberate indifference, while in excessive force cases, such as this one, the plaintiff must show malicious and sadistic behavior. *See Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Hudson*, —— U.S. at ——–——, 112 S.Ct. at 998–99. These standards clearly are different, *see id.*, and the instructions must inform the jury which of the two standards is applicable.

Cummings claims, however, that the specific instruction on excessive force adequately sets out the malicious and sadistic standard. We disagree. The Supreme Court has held that the malicious and sadistic standard is the "core judicial inquiry" in excessive force cases. *See Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Hudson*, —— U.S. at ——, 112 S.Ct. at 999. The instruction on excessive force merely lists the malicious and sadistic standard as one factor among several, and would potentially allow the jury to find excessive force without finding malicious and sadistic behavior or intent. Such an instruction does not present the malicious and sadistic standard as the jury's core inquiry, and thus does not meet the requirements of *Whitley* and *Hudson*.

## B. Nominal Damages Instruction

◼ Plemmons and Lawson also claim that the district court erred by submitting a nominal damages instruction to the jury on the Eighth Amendment claim. They claim that the Supreme Court's decision in *Hudson v. McMillian* makes an award of nominal damages in an Eighth Amendment case improper. According to the appellants, *Hudson*'s holding that in order to state an Eighth Amendment violation, the defendant must use more than *de minimis* force means nominal damages are improper: nominal damages are appropriate only for *de minimis* injuries, and thus any force serious enough to support Eighth Amendment liability must also support an award of actual damages. They contend that our precedents upholding nominal damages in Eighth Amendment cases are thus inconsistent with *Hudson*.

We disagree. Our Eighth Amendment precedents have consistently recognized that actual injury is required to state an Eighth Amendment violation. In *Cowans v. Wyrick*, 862 F.2d 697 (8th Cir.1989), we stated that "[t]he extent of injury inflicted is not just something that a jury may consider, it is a relevant factor as to whether or not the punishment inflicted was cruel and unusual. Indeed, a court must look to the extent of the pain inflicted in determining whether a constitutional deprivation occurred." *Id.* at 700 (citations omitted); *see also Warren v. Fanning*, 950 F.2d 1370, 1374 (8th Cir.1991). At the same time, we noted that nominal dam-

ages are appropriate in Eighth Amendment cases. In considering the appropriateness of nominal damages in the Eighth Amendment context, we stated: "In this situation, the award of nominal damages is not to compensate the abstract value of the right to be free from a constitutional violation. Rather, it serves to compensate for a degree of harm sufficient to establish cruel and unusual punishment, but insufficient to support a more substantial measure of damages with reasonable certainty." *Cowans*, 862 F.2d at 700; *see also Fanning*, 950 F.2d at 1374 ("The fact that the jury found that [the plaintiff's] Eighth Amendment rights had been violated does not mean that he suffered substantial compensable damages that could be measured accurately."). *Hudson* is not inconsistent with these holdings. The Court stated merely that "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force." *Hudson*, —— U.S. at ——, 112 S.Ct. at 1000. We read our requirement of actual injury as consistent with the Supreme Court's conclusion that more than *de minimis* force is necessary to state an Eighth Amendment violation, and thus cannot conclude that *Hudson* abolishes the propriety of nominal damages in Eighth Amendment cases.

## C. Evidentiary Issues

Appellants assign several errors concerning the district court's exclusion of certain evidence. These errors stem primarily from the district court's pretrial ruling that appellants could not mention that Cummings was initially interrogated because Kim Turner alleged he tried to rape her, and that appellants could not mention Cummings' convictions for assault and attempted rape stemming from the events on March 24, 1989. We conclude that the district court did not abuse its discretion in excluding appellants' direct testimony concerning the reason Cummings was initially picked up and excluding Kim Turner's testimony about her allegations of sexual assault. We further conclude, however, that the district court committed reversible error in excluding testimony about the sexual assault allegation and Cummings' prior assault conviction once Cummings

"opened the door" to these issues on direct examination.

The district court has broad discretion in deciding whether to admit evidence at trial. The court here excluded evidence pursuant to Federal Rule of Evidence 403. Under Rule 403, the court can and should exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R.Evid. 403; *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir.1981). We will reverse the district court only for a "clear and prejudicial" abuse of that discretion. *United States v. Wright*, 799 F.2d 423, 425 (8th Cir.1986); *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1221 (8th Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *Roth v. Black & Decker*, 737 F.2d 779, 783 (8th Cir.1984).

Appellants first claim that the district court erred by failing to allow them to testify on direct examination that they initially picked Cummings up to investigate Kim Turner's charge that Cummings attempted to sexually assault her. The district court excluded the evidence pursuant to Rule 403, finding it irrelevant and highly prejudicial.

We cannot conclude that the district court erred by excluding defendants' direct testimony that Cummings was initially picked up to investigate Kim Turner's allegation that Cummings attempted to rape her. First, the court found this evidence to be of little relevance to the case, and we agree. Appellants claim that the evidence is necessary to explain why Cummings reacted as he did in the captain's shack and to show the officers' state of mind. We disagree. The parties are not fighting over who was the aggressor in the captain's shack; while the officers claim Cummings swung first here and they swung back, Cummings claims no violence occurred at that time. Knowledge of why Cummings was picked up does little to make it more likely that the officers, and not Cummings, were telling the truth. The appellants further contend that without knowledge of why Cummings was called down to the captain's shack, the jury would be "in the dark" and

that the defense witnesses appeared as if they were hiding something because they had to be careful not to mention what happened to Kim Turner. Appellants made this argument to the district court, who concluded that the appellants' witnesses did not appear hampered by the limitations on admissible evidence. We are in no position to contradict this judgment call by the district court, who had an opportunity to observe the witnesses.

We also agree with the district court that this evidence would be highly prejudicial. Evidence is unfairly prejudicial in the Rule 403 sense not simply because it hurts a party's case; rather, evidence is unfairly prejudicial when it would influence the jury to decide the case on an improper basis. *See* Fed.R.Evid. 403 advisory committee's note ("Unfair prejudice ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); *United States v. Fawbush*, 900 F.2d 150, 152 (8th Cir.1990); *United States v. Estabrook*, 774 F.2d 284, 287 (8th Cir.1985). The court recognized evidence that Cummings, a black man, had sexually assaulted Turner, a white woman, could lead the jury to conclude that Cummings "deserved what he got." Appellants concede this, but claim that the evidence could work to Cummings' advantage: the jury might conclude that prison guards would be more likely to lash out at an inmate who assaulted their colleague, and be more likely to believe Cummings' version of the facts. This argument simply demonstrates the unfair prejudice this evidence could cause. Under both scenarios the evidence would lead the jury to decide the case on an improper basis. The district court balanced the prejudicial effect against the probative value, and concluded that the evidence should be excluded. We cannot conclude that this ruling was an abuse of discretion.

We believe that the district court did not abuse its discretion in excluding the testimony of Kim Turner regarding her allegations of sexual abuse against Cummings. Appellants claim that this testimony was necessary

to explain why Turner was present at Cummings' second interrogation concerning the alleged conduct violations, and to rebut Cummings' assertions that he offered no violence to anyone on the day he claimed he was assaulted. The district court concluded that such evidence would be more prejudicial than probative, and excluded it.[1] We cannot conclude that the district court abused its discretion. First, the evidence would have little probative force. Turner was allowed to testify as to her presence at the second interrogation, and stated that she saw no abuse of Cummings. The jury knew that Turner was a prison employee, and thus we doubt that the jury would wonder about why she was present at the interrogation. In any event, there is no evidence in the record to suggest that the jury was confused about this issue. Moreover, the district court did not err in concluding that a detailed narrative of the events leading to the sexual assault allegation would have been highly prejudicial. *See Fawbush*, 900 F.2d at 152; *Estabrook*, 774 F.2d at 287.

■ Appellants contend that the district court erred in not allowing them to introduce Cummings' deposition and pro se complaint to impeach Cummings' testimony that he did not know why he was initially called down for interrogation.

On direct examination, Cummings testified as follows:

Q. You said that Melvin Coonce was there trying to conduct an investigation. Did you ever tell—were you ever told why you were taken to the investigator's office, what was supposed to happen there?

A. [Cummings] No, not at this hour. No. They didn't ask me no damn questions. At this hour, nobody told me nothin'.

Tr. Vol. I at 29–30. Appellants made an offer of proof consisting of Cummings' deposition and pro se complaint, in which Cummings stated that the officers had told him he was being interrogated concerning Kim Turner's allegations of sexual assault. The district court ruled this evidence inadmissi-

---

1. We assume that the court excluded the evidence pursuant to Rule 403, although that is not specifically stated in the record.

ble, relying on his pretrial ruling excluding reference to the sexual assault.

■ Appellants contend this ruling constitutes reversible error. We agree. We recognize that the district court has broad discretion in determining whether to admit evidence, and may refuse to admit evidence consisting of prior inconsistent statements if the likelihood of prejudice caused by that evidence substantially outweighs its probative value. *See United States v. Dennis*, 625 F.2d 782, 796 (8th Cir.1980). In the circumstances here presented, however, we believe that such a ruling was an abuse of discretion. First, the parties' descriptions of the events were diametrically opposed. The entire case thus depended on whose story the jury believed; credibility of witnesses was paramount. Second, regardless of whether the reason Cummings was interrogated was relevant at the outset of the case, Cummings himself raised the issue on direct examination. He injected the issue, and thus "opened the door" to an examination of the reason why he was interrogated. *See, e.g., Gee v. Pride*, 992 F.2d 159, 161 (8th Cir. 1993); *United States v. Lara*, 956 F.2d 994, 996–97 (10th Cir.1992); *United States v. Helina*, 549 F.2d 713, 719 (9th Cir.1977).

Such action does not mean the evidence is automatically admissible, but it certainly changes the balance of probative value and prejudicial effect under Rule 403. Cummings not only made the issue of why he was initially interrogated relevant, but created an inference, unrebuttable because of the court's pretrial ruling, that appellants had no valid reason to interrogate him. Moreover, the pretrial statements directly contradicted Cummings' trial testimony. Given these additional circumstances, we conclude that the district court abused its discretion by failing to allow appellants to rebut Cummings' statement that he did not know why he was initially interrogated with his prior inconsistent statements.

■ The above analysis also controls appellants' claim that the district court erred by refusing to admit evidence that Cummings had been convicted of assaulting Plemmons on March 24, 1989, to impeach Cummings' statement that he did not strike Plemmons. Again, Cummings injected the issue into the case by claiming that he never struck Plemmons. At this point, we believe, the district court was obligated to reweigh the prejudicial effect of his conviction in light of its enhanced relevance and probative value. We are not convinced that the court did so.

We are convinced that the district court abused its discretion in excluding evidence of Cummings' prior conviction once he claimed not to have struck Plemmons. The evidence is directly relevant to Cummings' credibility, and, while prejudicial to Cummings' case, does not create a serious risk of *improper* prejudice. Moreover, refusing to allow appellants to introduce Cummings' prior conviction would improperly allow him to contest in this case a fact conclusively decided against him in the earlier criminal case. *Cf. Grant v. Farnsworth*, 869 F.2d 1149 (8th Cir.1989) (evidence of conviction for interference with official acts relevant to civil rights action because it precludes the relitigation of facts that were necessary for the state court jury to convict plaintiff). Thus, we conclude that the district court abused its discretion by refusing to allow appellants to introduce evidence of Cummings' conviction for assaulting Plemmons.

■ We also conclude that the district court erred in refusing to allow the defendants to introduce Cummings' "face sheet" to prove his specific prior felony convictions. During cross-examination, the following colloquy occurred between Cummings, defense counsel, and the court:

Q. Is it true that you have felony convictions?

A. That's true.

Q. Is it true that you have six felony convictions?

A. That's true. Then again, six felony convictions? That's not true. I lied. I got—I got—I think I got four or five, four. One was broken down to a—not a state charge, it was—I think he broke it down to less than 150, so it wasn't a felony, it was a misdemeanor, a A class misdemeanor, or something like that. It wasn't—it wasn't a

felony. No. No, that's right. Still and [2] [sic] under 150 was not a felony, it was a A class misdemeanor. That's why I got county time for it, yes.

MR. PRITCHETT: Your Honor, I request permission to show the felony convictions, so we can establish how many there are.

THE COURT: Well, it's four or five, six. All right. Go ahead. Go ahead and examine him.

MR. PRITCHETT: May I—

THE COURT: The number doesn't make any difference.

Tr. Vol. I at 62.

 As we noted above, credibility was paramount in this case. Every opportunity to impeach Cummings' credibility was crucial to the defense. We cannot conclude that the district court carefully weighed the probative value of these convictions against the potential prejudice; rather, it appears here that the court excluded the evidence because it believed the number of convictions was irrelevant.[3] We believe this ruling was an abuse of discretion. Given the importance of credibility, the jury had the right to determine whether four, five, or six convictions made a difference. Moreover, we conclude that the jury should have heard Cummings' specific convictions. Federal Rule of Evidence 609 is based on the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath. See Campbell v. Greer, 831 F.2d 700, 707 (7th Cir.1987). But most jurors probably do not understand "the range of offenses connoted by the term 'felony,'" id., and thus need to know the specific crime in order to evaluate its effect on credibility. Although the trial judge has discretion under Rule 403 to limit inquiry into past convictions, see Jones v. Board of Police Comm'rs, 844 F.2d 500, 505 (8th Cir.1988), and in an appropriate case might exclude the names of specific crimes

under Rule 403, we believe that in a case such as this one, where credibility was so important, the jury should have heard the specific felonies. Cf. id. at 506 (court upheld introduction of defendant's past convictions for rape and forcible sodomy in his 1983 case when the jury had to choose between conflicting versions of the evidence and credibility determinations were paramount). The ability to introduce the specific crime is not a license to flaunt its details, however; cross-examiners are limited to eliciting the name, date and disposition of the felony committed. See Lewis v. Sheriffs Dep't for City of St. Louis, 817 F.2d 465, 467 (8th Cir.1987); United States v. Brown, 794 F.2d 365, 366 (8th Cir.1986); Greer, 831 F.2d at 707–08. We believe that such a balance sufficiently protects Cummings from unfair prejudice while properly allowing appellants to attack his credibility.

 Appellants also claim that the district court erred in refusing to allow them to establish that two defendants, Plemmons and Blank, had testified against Cummings in the assault and attempted rape trials stemming from the events on March 24, 1989. The court again relied on its initial decision not to allow the appellants to mention Cummings' specific prior convictions. Appellants claim this ruling prevented them from demonstrating Cummings' bias against these officers.

We again review this ruling for abuse of discretion, and find none. The court allowed appellants to establish that two defendants had testified against Cummings, resulting in convictions adding sentences of fifteen and five years. Cummings admitted on cross-examination that he blamed those officers for his extra prison time. Appellants also established that Plemmons wrote a conduct violation concerning Cummings' alleged assault against him that resulted in Cummings' placement in a lock down cell. Thus, appellants had significant opportunity to show Cummings' bias, and did it well. Connecting up the officers' testimony with the events of

**2.** The context of the quote suggests that Cummings actually said "stealing."

**3.** The district court did consider this issue as part of a pretrial motion in limine, and ruled that appellants could ask only about the number of

Cummings' felony convictions. We are not convinced, however, that the district court carefully balanced the probative value of this evidence, given the importance of credibility, against its potential prejudicial effect.

March 24, 1989, would add little to the impression of bias. As the district court correctly recognized, however, allowing appellants to connect up this testimony would allow evidence of the attempted rape against Officer Turner in through the back door. We cannot conclude that this ruling was an abuse of discretion.

To summarize, we conclude that given the way this trial unfolded, the district court erred in refusing to allow appellants to introduce: (a) Cummings' prior inconsistent statements; (b) evidence of Cummings' conviction for assaulting Plemmons; and (c) evidence of Cummings' specific prior felony convictions. We affirm the district court's rulings excluding appellants' direct testimony about why they initially picked Cummings up, excluding the testimony of Kim Turner concerning the alleged assault, and excluding evidence that Plemmons and Blank testified in Cummings' attempted rape and assault trials.

### D. Attorneys' Fees

Finally, appellants contest the district court's award of attorneys' fees to Cummings. Because we reverse and remand for a new trial, we vacate the award of attorneys' fees.

### III. CONCLUSION

Therefore, we reverse and remand for proceedings consistent with this opinion.