**UNITED STATES of America, Appellee and Cross–Appellant,**

v.

**Toney Bissett FORD, Appellant and Cross–Appellee.**

**Nos. 93–1868, 2176.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1993.

Decided March 1, 1994.

Counsel who presented argument on behalf of the appellant was David R. McManus of Cedar Rapids, IA.

Counsel who presented argument on behalf of the appellee was Steven M. Colloton, AUSA, of Cedar Rapids, IA.

Before RICHARD S. ARNOLD, Chief Judge, BEAM, Circuit Judge, and BOGUE,* Senior District Judge.

BEAM, Circuit Judge.

Toney Bissett Ford appeals his conviction for conspiracy to distribute crack cocaine. He claims that the prohibition against double jeopardy bars his conviction and further alleges that the district court should have dismissed the charges against him because of prosecutorial misconduct. He also raises various evidentiary and constitutional claims. The government cross-appeals contending that the district court erred by granting Ford a two-point reduction for acceptance of responsibility. We affirm Ford's conviction but reverse his sentence and therefore remand to the district court.

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

## I. BACKGROUND

Ford was indicted for four counts of possession with the intent to distribute, and distribution of, cocaine base in violation of 21 U.S.C. § 841(a)(1) and for one count of conspiracy to distribute cocaine base under 21 U.S.C. § 846. On the second day of trial, the prosecutor advised the court that a defense witness, Ruby Sledge, had been arrested in the federal building by local authorities on an outstanding state-court warrant. An arrest in the courthouse is an apparent contravention of the informal policy governing such arrests. Furthermore, the Marshals Service was not notified prior to the execution of the warrant for Sledge's arrest. Sledge became extremely distraught and the court determined that she was not in any condition to testify. On August 27, the court initiated an inquiry into the matter. After interviewing Sledge outside the presence of the jury, the court informed Ford that, due to Sledge's inability to testify, a mistrial would be granted if he wished. Ford first stated that he did not want a mistrial, but immediately changed his mind and requested a mistrial. Transcript I at 514. Without any objection from Ford, the court declared a mistrial on its own motion.

Before the second trial commenced, Ford moved to dismiss the charges against him on grounds of double jeopardy. The court denied this motion and also denied a separate motion that the charges be dismissed because of prosecutorial misconduct. The case proceeded to trial on September 28, 1992. The jury returned guilty verdicts on all five counts.

At the sentencing hearing, the district court considered whether Ford had accepted responsibility for his actions. Based on Ford's admission that he "was probably there," the district court concluded that Ford had, in fact, accepted responsibility for his actions and granted him a two-level reduction under U.S.S.G. § 3E1.1. The district court sentenced Ford to a 168–month term of imprisonment and gave him credit for the 11 months he had already spent in jail. Ford appeals his conviction and sentence, and the government cross-appeals the sentence imposed by the district court.

## II. DISCUSSION

### A. Double Jeopardy

Ford first contends that the district court erred by denying his motion to dismiss the indictment on the ground of double jeopardy. He argues that no "manifest necessity" existed to justify the mistrial and therefore that the second trial violated his Fifth Amendment rights. We find that the "manifest necessity" test is not the appropriate standard to apply in this case. See United States v. Dixon, 913 F.2d 1305, 1310 n. 2 (8th Cir.1990) (manifest necessity test does not apply when the defendant requested or consented to a mistrial.)

■ The Fifth Amendment protection from double jeopardy is one of the cornerstones of our criminal justice system. The rights protected by the Fifth Amendment include the right to have one's case decided by a particular jury impaneled for that purpose. Id. at 1309–10. Thus, double jeopardy concerns arise when a mistrial is declared before a final resolution of the case on the merits. If a mistrial is declared over the objections of a criminal defendant, double jeopardy will prevent a second trial unless the mistrial was a manifest necessity. Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982) (citing United States v. Perez, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824)). If the defendant does not object, double jeopardy is not implicated unless the conduct giving rise to the mistrial was intended to provoke the defendant to move for a mistrial. Id. 456 U.S. at 679, 102 S.Ct. at 2091.

■ Ford did not object to the mistrial in this case. After Sledge was arrested, the court informed Ford that it would grant a mistrial if he requested one. Ford initially stated that he did not want a mistrial, but upon consultation with his attorney, Ford changed his mind. Ford's attorney informed the court that: "[m]y client has reconsidered and ... he requests that a mistrial be declared." Transcript I at 514. Ford places great weight on the facts that he requested the mistrial be declared on the government's motion rather than his own, and that the

court eventually declared a mistrial on its own motion. However, those facts do not vitiate Ford's consent to the mistrial. Furthermore, Ford raised no objection to the mistrial, either at conference or when the jury was dismissed.

We cannot find that the mistrial was granted over Ford's objections rather than with his consent. Therefore, double jeopardy is only implicated if we conclude that the prosecutor deliberately engaged in conduct designed to provoke Ford into requesting a mistrial. The district judge found that the government's conduct was not designed to provoke a mistrial. We agree. While the local officials violated the informal procedures governing arrest of a witness in the federal courthouse, we find no evidence that this conduct was designed to provoke a mistrial.

**B. Prosecutorial Misconduct**

■ Ford next contends that Sledge's arrest amounts to prosecutorial misconduct and as a result the charges against him should be dismissed. We need not address the issue of whether or not the improperly conducted arrest rises to the level of official misconduct on the part of the arresting officers because we have no reason to attribute those actions to the federal prosecutor in this case. While it is true that the federal prosecutor notified the local authorities that Sledge was appearing as a witness, there is absolutely nothing in the record to suggest that the prosecutor intended an improper arrest. Indeed, had the local authorities followed established procedure, Sledge would still have been arrested. After Sledge's arrest, other defense witnesses were properly arrested in accordance with the informal procedure.

**C. Excluded Evidence**

■ Ford alleges that the district court improperly excluded information regarding a felony conviction of the prosecution's primary witness, George McMullen, and that this error prejudiced his case. Specifically, Ford contends that he should have been able to

introduce evidence that McMullen had been convicted of a sex-offense against a minor. The jury was told that McMullen had a felony conviction but the court excluded the specific nature of the offense as overly prejudicial under Federal Rule of Evidence 403.[1]

The district court has broad discretion in deciding whether to admit evidence at trial. We will reverse the district court only for a clear and prejudicial abuse of that discretion. *United States v. Wright,* 799 F.2d 423, 425 (8th Cir.1986). We find that the exclusion in this case was not a clear abuse of discretion. It is true that a panel of this circuit has recently noted that "most jurors probably do not understand the range of offenses connoted by the term felony, and thus need to know the specific crime in order to evaluate its effect on credibility." *Cummings v. Malone,* 995 F.2d 817, 826 (8th Cir.1993) (quotation omitted). However, the *Cummings* court also left open the possibility that "in an appropriate case [the trial judge] might exclude the names of specific crimes under Rule 403." *Id.* It is within the district court's discretion to conclude that the nature of McMullen's sexual offense might inflame the jury. The introduction of McMullen's specific felony could easily have distracted the jury from its task without adding any real probative information to their deliberations.

[6] Ford was given an opportunity to vigorously cross-examine McMullen. He introduced the sex-offense conviction as an unspecified felony, and also introduced evidence of McMullen's prior forgery conviction. Under the circumstances, we cannot say that excluding the specific nature of McMullen's sex offense was an abuse of discretion. This is exactly the type of decision that *Cummings* left to the discretion of the trial judge under Rule 403. Furthermore, the evidence against Ford was substantial. The government presented evidence of four controlled buys of crack cocaine which were monitored by law enforcement officials over a wireless transmitter. Although McMullen was the primary prosecution witness, his testimony

---

1. Fed.R.Evid. 403 provides in relevant part: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues....

was corroborated by the law enforcement officers who monitored the transactions. Therefore we cannot conclude that the exclusion of the nature of McMullen's felony conviction resulted in any prejudice to Ford.

Ford raises numerous other claims of error. We find those contentions meritless.

### D. Acceptance of Responsibility

 The district court granted Ford a two-level downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1. The government appeals this decision. We review the decision to grant a downward departure for acceptance of responsibility under a clearly erroneous standard. *United States v. Unzueta-Gallarso*, 966 F.2d 390, 391 (8th Cir.1992) (per curiam). Comments made by the sentencing judge suggest that his decision to grant the downward departure might have been based, at least in part, on disaffection with the guidelines rather than on Ford's conduct. The district court construed Ford's concession that he "was probably there" as acceptance of responsibility under section 3E1.1. Sentencing Transcript at 198. We are unable to determine whether the trial judge grounded this finding on his observations of Ford's demeanor and his familiarity with Ford's patterns of speech or if he simply disapproved of the guidelines. We therefore remand to the district court for clarification or resentencing.

### III. CONCLUSION

For the reasons stated above, Ford's conviction is affirmed and the case is remanded to the district court for clarification or resentencing.