104 F.3d 361
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Franklin D. PARTON, Defendant-Appellant.
 No. 96-5703.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1996.
 
 Before: LIVELY, NELSON, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 During the trial of Franklin DeWayne Parton on charges of being a felon in possession of a firearm, the defendant moved for a mistrial, following objectionable questioning by the assistant U.S. attorney and objectionable testimony by a witness. The district court granted the motion, and the defendant now appeals the district court's subsequent denial of his motion to dismiss the indictment on the ground of double jeopardy. For the reasons that follow, we will affirm.
 
 I.
 
 2
 In the late autumn of 1994, two City of Knoxville, Tennessee, police officers, Brian Keith Davis and Lawrence Lipscomb, were "moonlighting" by patrolling a Knoxville public housing project. While they were on a street adjacent to the housing project, the officers allegedly saw the defendant make a left turn without signalling. The officers believed that they recognized the driver as DeWayne Parton, whom they knew to be "one of the subjects listed on a Knoxville Community Development Center no trespass letter." Finally, the officers believed that "the noise from the ... car was at a level which violated the Knoxville City Ordinance on noise pollution." Based on these three factors--the lack of a signal, the no-trespass letter, and the noise--the officers decided to pursue the car. When they stopped the car, they saw the driver open the door approximately six inches and place an object that the officers concluded was a gun under the car. The police then got the driver out of the car and searched him; while being escorted back to the patrol car, the driver fled. The police later found a gun under the car, and Parton was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).
 
 
 3
 On the day set for trial, outside the presence of the jury, the defendant presented a motion in limine requesting that the court require Officers Davis and Lipscomb "to reveal to the Court and the parties outside the presence of the jury the basis of their claim that they recognized the defendant." The motion stated that neither officer had ever arrested the defendant, and that the defendant had never had any contact with either officer, leading the defendant to hypothesize that "the witnesses will claim knowledge of the defendant from hearsay and reputation," in violation, counsel stated, of Fed.R.Evid. 403.
 
 
 4
 The AUSA denied that there was any basis for the defendant's concern, and specifically disavowed any intention of asking the officers how, on the night in question, they had been able to identify the driver of the vehicle as DeWayne Parton. The district court then cautioned the AUSA, "You can't get into reputation, anyway," and the AUSA again affirmed, "I have no intention of doing that, absolutely none." Both officers were sitting in the courtroom during this colloquy.
 
 
 5
 The first government witness was Officer Lipscomb. Approximately ten minutes into direct examination, while in the course of describing his attempted arrest of the occupant of the car, Lipscomb testified as follows:
 
 
 6
 I observed--I jumped out of the vehicle quickly, because I knew it was DeWayne Parton; I jumped out of defense to prepare myself, because the subject had fled from me before, with his reputation of carrying firearms--
 
 
 7
 (Emphasis added.) Lipscomb's statement was made in the course of a long narrative description of events, and was not prompted in any way by the AUSA's questioning.
 
 
 8
 Defense counsel and the district court responded to this testimony as follows:
 
 
 9
 [Defense Counsel]: Your Honor?
 
 
 10
 The Court: Officer, that's not admissible right now. Just tell like, like what you did. Nobody's asked you about that, now. Just answer the question of counsel what you did, not what was going through your mind.
 
 
 11
 [Defense Counsel]: Your Honor, could you instruct the jury, please?
 
 
 12
 The Court: The jury will disregard that, that last statement about reputation. It's not an issue here right now.
 
 
 13
 Approximately three minutes later, the AUSA engaged in the following questioning:
 
 
 14
 [AUSA:] Okay, all right. Now, let's go back to--did you observe the window, did you observe him rolling the window up or did you--
 
 
 15
 [Officer Lipscomb:] I observed the window down halfway, which gave me a ... direct view of his face, which gave me the indication, which led me identify [sic] him as DeWayne Parton.
 
 
 16
 ....
 
 
 17
 [AUSA:] All right. And how did you know that that [sic], the face you saw, was DeWayne Parton?
 
 
 18
 [Officer Lipscomb:] Previous encounters with him.
 
 
 19
 (Emphasis added.)
 
 
 20
 Again, defense counsel immediately responded, and asked to approach the bench.
 
 
 21
 [Defense Counsel]: Your Honor, I was already prepared to move for a mistrial when this witness got off the stand, about what happened. He was sitting in here when we had this discussion about the reputation and the firearms, and he heard Your Honor, he knew that was improper.
 
 
 22
 He was asked it, it was exactly what I was afraid of it [sic], and it was exactly why I filed the motion in limine, and that's exactly what happened.
 
 
 23
 [AUSA]: I'm not sure I know--
 
 
 24
 The Court: I know. It's obvious what happened. He did exactly what she said he was going to do. I mean, we sat here and talked about it. You said, "No. We're not going to have reputation, Judge." You said, "I've got it all taken care of," and you didn't get it taken care of.
 
 
 25
 The AUSA argued that she had not discussed with the officer the court's prohibition on talking about reputation, and further argued that Lipscomb's testimony had simply been "setting the scene."
 
 
 26
 The district court then took a recess in order to review a transcript of the morning's proceedings, after which it declared a mistrial based on Lipscomb's initial, unelicited testimony:
 
 
 27
 [I]n the case we have here today, this man's charged with a felon carrying a gun. This officer, to add insult to injury, he said, "I jumped out of defense to prepare myself, because the subject had fled from me before, with his reputation of carrying firearms."
 
 
 28
 Now, that's about as bad as you can get. That's the case we're talking about, his reputation for carrying firearms. I mean, you've got in a reputation, you've got in--you got in really prior bad acts. You've gone into all kinds. You've opened a door here that I don't think can be closed.
 
 
 29
 I'm going to declare a mistrial.
 
 
 30
 Following the grant of the mistrial, the defendant filed a motion to dismiss the indictment on the ground of double jeopardy. The district court denied the motion to dismiss without explanation, but granted a stay pending appeal.
 
 II.
 
 31
 We conduct de novo review of a district court's denial of a motion to dismiss an indictment on the ground of double jeopardy. In re Ford, 987 F.2d 334, 339 (6th Cir.1992); United States v. Cameron, 953 F.2d 240, 243 (6th Cir.1992). The question of the prosecutor's intent to cause a mistrial is, however, a finding of fact. Oregon v. Kennedy, 456 U.S. 667, 675 (1982).
 
 III.
 
 32
 The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. CONST. amend. V, and it "protects a criminal defendant from repeated prosecutions for the same offense," Kennedy, 456 U.S. at 671. However, when "a mistrial [is] declared at the behest of the defendant," the usual rule is that the government is not precluded from retrying him. Id. at 672.
 
 
 33
 "[T]here is," however, "a narrow exception to th[is] rule." Id. at 673. The Supreme Court has "recognized ... that there would be great difficulty in applying ... a rule [allowing a retrial] where the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.' " Id. (citation omitted). The Court explained the exception as follows:
 
 
 34
 Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." ... Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
 
 
 35
 Id. at 675-76 (emphasis added) (citation omitted).
 
 
 36
 This court has, on several occasions, articulated factors that might lead a court to conclude that a prosecutor had indeed "goaded" defense counsel into requesting a mistrial. See United States v. White, 914 F.2d 747, 752 (6th Cir.1990); United States v. Thomas, 728 F.2d 313, 317-19 (6th Cir.1984); see also United States v. McKoy, 78 F.3d 446, 449 (9th Cir.), cert. denied, 117 S.Ct. 67 (1996); United States v. Ivory, 29 F.3d 1307, 1310 (8th Cir.1994); cf. United States v. Cartagena-Carrasquillo, 70 F.3d 706, 714 (1st Cir.1995). Here, however, the district court made no finding of fact with respect to the prosecutor's intent to goad. See United States v. Oseni, 996 F.2d 186, 187-88 (7th Cir.1993). Two possible alternatives for this court, therefore, are to remand this case for such findings as may be necessary or, if warranted, to find as a matter of law that the prosecutor's conduct amounted to goading.
 
 
 37
 We elect neither course. Parton's entire basis for contending the prosecutor intended to provoke the defendant to request a mistrial is that Lipscomb, as opposed to the prosecutor, willfully disregarded the court's ruling; Parton argues that Lipscomb's conduct should be imputed to the government. We find no cases, however, supporting the defendant's position that Lipscomb's alleged misconduct, standing on its own, should be used as a proxy for a showing of prosecutorial intent. Indeed, other courts have explicitly rejected that argument. See United States v. Ford, 17 F.3d 1100, 1103 (8th Cir.1994); United States ex rel. Clauser v. McCevers, 731 F.2d 423, 431 (7th Cir.1984).
 
 
 38
 There is, moreover, nothing in the record, apart from the defendant's unsupported speculation, see Cartagena-Carrasquillo, 70 F.3d at 714, that would lead us to conclude that the declaration of the mistrial was in any way influenced by an improper intention on the part of the prosecutor. We conclude, therefore, that not only is there no basis for concluding as a matter of law that the prosecutor goaded defense counsel into requesting a mistrial, there is not even any basis for remanding this case for further fact-finding on the issue.
 
 IV.
 
 39
 The district court's judgment is AFFIRMED.