COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-408-CR
 
 
 
EX 
PARTE
 
KENNETH 
J. WASHINGTON
 
 
 
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        After 
the trial court granted Appellant’s motion for mistrial, Appellant filed an 
application for writ of habeas corpus alleging further prosecution was barred by 
double jeopardy. The trial court granted the writ, held a hearing, and denied 
the relief sought by Appellant. In three issues, Appellant claims the 
witnesses’ testimony that triggered the granting of the mistrial was 
attributable to the State because the mens rea of the witnesses in 
violating the court’s motion in limine is imputed to the prosecution, and the 
improper statements of the witnesses raise a claim of double jeopardy under the 
Texas and United States Constitutions. We affirm.
BACKGROUND
        Appellant 
was charged with three offenses arising out of the same incident: aggravated 
assault causing bodily injury to a public servant while using a deadly weapon (a 
motor vehicle); aggravated assault causing serious bodily injury to a public 
servant while using a deadly weapon (a motor vehicle); and failing to stop and 
render aid after becoming involved in an accident that resulted in injury to a 
public servant.  During pretrial proceedings, the trial court granted 
Appellant’s request that any matters involving any extraneous offense or 
extraneous conduct not be presented to the jury until the court had an 
opportunity to review the proposed testimony.
        On 
April 19, 2004, a jury was chosen and trial on the merits began the next day.  
As will be discussed in detail herein, after two testifying police officers 
violated the motion in limine on three separate occasions by mentioning possible 
extraneous offenses committed by Appellant, the court granted Appellant’s 
motion for mistrial.
        On 
May 26, 2004, Appellant filed an application writ of habeas corpus contending 
that because of the improper statements of the State’s witnesses, the case 
should be dismissed on double jeopardy grounds.  The trial court granted 
the writ and on August 3, 2004 held a writ hearing.  At the conclusion of 
the hearing, the trial court denied the relief sought in Appellant’s 
application for writ of habeas corpus.
THE THREE INSTANCES OF ALLEGED IMPROPER TESTIMONY[1]
        Officer 
Kelley M. Caruthers from the Fort Worth Police Department testified that on 
February 13, 2003 he received a police broadcast concerning a possible 
hit-and-run driver; the broadcast named and described the suspect. The 
prosecutor then asked Caruthers,
 
Q. What name did you learn?
 
A. 
I haven't got it handy. It's a different name, Za'id Shakir, something.
 
Q. 
Okay. Did you write a report based on this?
 
A. 
No, ma'am.
 
Q. 
What did you do after you heard the initial broadcast?
 
A. 
I went to the address on Burton.
 
Q. 
Whose address did that turn out to be?
 
A. 
Kenneth's mother.
 
Q. 
Do you know her name?
 
A. 
No, ma'am.
 
Q. 
How did you know it was Kenneth's mother?
 
A. 
I found out.
 
Q. 
Did she identify herself as his mother?
 
A. 
When I went up there and asked the second time.
 
Q. 
So you went there twice?
 
A. 
Three or four times.
 
Q. 
Three or four times. Initially when you went there, what type of information did 
you learn?
 
A.  
I went there originally with that other name, 
and she said she didn't know him, and I left, and I found out that Kenneth had 
been to prison and changed his name.  His original name was 
Kenneth Washington --
 
MR. 
HARDING: Your Honor, we're going to have to object –
 
THE 
WITNESS: I'm sorry.
 
MR. 
HARDING: -- to the last remark that was made by Officer Caruthers, and ask that 
the jury be instructed to disregard it.
 
THE 
COURT: Okay. Jury will disregard the last comment of the officer.
 
MR. 
HARDING: And also, Your Honor, we'd like to ask for a mistrial.
 
THE 
COURT: Denied.
 
MR. 
HARDING: Excuse me one moment.
 
(Brief 
pause)
 
MR. 
HARDING: Your Honor, can we approach?
 
(At 
the bench, on the record)
 
MR. 
HARDING: Your Honor, I know it was inadvertent, I'm well aware of that, and I'm 
sure it was inadvertent on Officer Caruthers part, but I just think it was so 
prejudicial of this witness, I think we need to be heard outside the presence of 
the jury on that. That just slipped completely out. I'm --
 
THE 
COURT: It was clearly inadvertent.
 
MR. 
HARDING: I think it was. I don't doubt that.
 
THE 
COURT: It's not worth a mistrial, so you've got your objection and your adverse 
ruling.
 
MS. 
NGUYEN: And I agree it was inadvertent. I can instruct my witness --
 
MR. 
HARDING: I know that. Okay. The only thing I might do, just let everybody know, 
if I get real ambitious, I might check a little law and see if I can find 
anything. But for now I guess --
 
THE 
COURT: Your request for a mistrial is denied.
 
MR. 
HARDING: Is denied, okay. The other thing I'd ask is I think Officer Caruthers 
knows --I think he knows it slipped out. I got that impression, so --
 
THE 
COURT: He mumbled under his breath that he was sorry or oops. It was clearly an 
inadvertent statement on behalf of the officer based on what he was able to 
observe and hear.
 
MR. 
HARDING: Yeah, I think it was. It still has a terribly prejudicial effect on our 
guy.
 
MS. 
NGUYEN: Okay.
 
MR. 
HARDING: And you will instruct them to disregard?
 
THE 
COURT: I already have.
 
MR. 
HARDING: You did?
 
THE 
COURT: Yes.
 
MR. 
HARDING: Oh, one more thing. I'm sorry.
 
MR. 
DICKSON: He finds our client in a crack house. We don't want to go into that.
 
THE 
COURT: You aren't going into that, are you?
 
MS. 
NGUYEN: I was the location. I believe he can describe the address and location, 
but --
 
THE 
COURT: He can go into the address and location and ask if the Defendant lived 
there, but that's about it. We're not going into anything else. Okay?
 
MR. 
DICKSON: Can she just whisper in his ear and make sure that doesn't slip out 
either?
 
MR. 
HARDING: That would be fine. I'm just afraid we're so close to the jury.
 
THE 
COURT: She'll do it quietly.
 
 
Several 
minutes later, during the prosecutor’s continued direct examination of Officer 
Caruthers, the following occurred:
 
Q.  (BY MS. NGUYEN) What did you do when you saw him in the car?
 
A.  
I told him that I had a warrant for his 
arrest for the criminal mischief at 5500 --
 
MR. 
HARDING: Your Honor, I'm going to have to make another objection based on that, 
and also -- and, of course, the motion in limine, and I would ask that the jury 
be instructed to disregard that.
 
THE 
COURT: All right. Retire to your jury room. Let's take our midafternoon break.
 
(Jury 
not present)
 
THE 
COURT: Everyone can be seated. Where is this criminal mischief coming from?
 
MS. 
RHODEN: Mr. Harding has a motion to suppress based on his arrest. We know there 
was a valid warrant for his arrest. He was arrested for this.
 
MR. 
HARDING: I believe we also have a motion in limine with respect to any other 
crimes, acts, Your Honor.
 
THE 
COURT: Well, it's my understanding that y'all were going to give me heads up on 
the motion --
 
MS. 
RHODEN: The answer should have just been he had an arrest warrant.
 
THE 
COURT: Well, somebody hasn't prepped the witnesses enough to tell them what to 
testify to and what not to testify to. This is the second violation that we've 
had here. I suggest we take a break. Tell your witness what he can testify to 
and what he can't testify to, and we're going to come back.
 
MR. 
HARDING: Your Honor, for what it's worth, I'm sure it's inadvertent, but still, 
it's very prejudicial to my client.
 
THE 
COURT: So what do you want?
 
MR. 
HARDING: Mistrial.
 
THE 
COURT: Denied. That's two strikes, though.
 
 
        On 
the next day of trial, the State called Detective Raymond D. Wilson, Jr. of the 
Fort Worth Police Department. Detective Wilson investigated the hit-and-run 
accident that occurred on February 13, 2003. He surveyed the scene, took 
statements from the witnesses involved, and attempted to find the suspect. He 
was advised that a vehicle matching the description of the hit-and-run car had 
been found in another location. He testified that he requested that the police 
tow the car to the Fort Worth auto pound. The prosecutor then continued direct 
examination as follows:
 
Q. And did you make any requests or do anything as it related to the car being 
in the auto pound? Did you send Detective Wangler to collect some evidence?
 
A. 
Later in the afternoon, yes.
 
Q. 
And for what purpose?
 
A. 
I was told that there was some possible identification located in the vehicle, 
wallet identification. Through a subsequent 
interview I was also told that there may be narcotics in the vehicle.
 
MR. 
HARDING: Your Honor, I'm going to have to object at this point.
 
THE 
COURT: The jury will retire to the jury room.
 
(Jury 
not present)
 
THE 
COURT: Mr. Harding?
 
MR. 
HARDING: Your Honor, I didn't have the opportunity since you retired the jury to 
request obviously an instruction to disregard, and also a mistrial, Your Honor.
 
THE 
COURT: Are you asking for that now?
 
MR. 
HARDING: Yes, indeed, I am.
 
THE 
COURT: That's granted.
 
MR. 
HARDING: Thank you, sir.
  
THE WRIT HEARING
        After 
the trial court granted the mistrial, Appellant filed an application for writ of 
habeas corpus asserting that because of the three separate instances of police 
officers improperly testifying about extraneous bad acts and prior offenses or 
misconduct alleged to have been committed by Appellant, further prosecution was 
barred under the double jeopardy clauses of the Texas and United States 
Constitutions. Three witnesses testified at the writ hearing: the trial 
prosecutors, Dawn Darice Rhoden and Trang Taylor Nguyen, and Detective Raymond 
D. Wilson, Jr.[2]
        Trang 
Taylor Nguyen, co-prosecutor at Appellant’s trial, testified that she had 
meetings with Officer Kelley Caruthers before trial. When asked whether she had 
told Caruthers not to mention any extraneous bad acts, misconduct, or other 
crimes, she replied, “I believe we warned our officers before trial.”  
However, upon further questioning, she acknowledged that the first time she 
specifically remembers telling Caruthers not to mention any extraneous offense 
or any sort of misconduct on Appellant’s part was after Caruthers had already 
told the jury that Appellant had been to prison and changed his name.
        Dawn 
Darice Rhoden testified that she was the lead prosecutor in the case, and in 
reviewing the case with Detective Raymond Wilson before trial, she stressed to 
him that under no circumstances was he to mention an extraneous offense or any 
other bad act possibly committed by Appellant in connection with this case. 
However, the concept of possible narcotics being in Appellant’s car was 
central to the State’s case, so Rhoden discussed it in detail with Wilson 
during their pretrial meetings. During the writ hearing, Rhoden explained that 
the identity of the driver of the hit-and-run car was a contested issue and that 
she had anticipated that at some point during the trial, Wilson would testify 
that Appellant had told the police that his car had been stolen but that he did 
not report the theft to the police because there were narcotics in the car and 
he did not want to get into trouble. Wilson would then tell the jury that 
because of this statement by Appellant, Wilson looked inside Appellant’s car 
for narcotics and found none. Rhoden testified that during her pretrial 
conversations with Wilson, she never specifically instructed him not to 
gratuitously mention the topic of possible narcotics being in Appellant’s car.
        Detective 
Raymond D. Wilson, Jr. testified at the writ hearing that prior to trial, Rhoden 
met with him and told him not to mention Appellant’s previous criminal 
history, or any bad acts or extraneous offenses of Appellant. However, Rhoden 
never told him not to testify about narcotics. He acknowledged that being in 
possession of narcotics is against the law. But he stated that when he made the 
comment in front of the jury that he had been told that there may be narcotics 
in Appellant’s vehicle, he did not think this was an extraneous or bad act of 
the Appellant. His reasoning was that if Appellant’s counsel had not objected 
and Wilson had been permitted to continue with his answer, he would have told 
the jury that no narcotics were discovered in Appellant’s car; therefore, in 
his mind, he did not mention an extraneous or bad act on the part of Appellant.
        At 
the conclusion of the writ hearing, the trial court denied the relief requested.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
        On 
September 7, 2004, the trial court issued the following findings of fact and 
conclusions of law:
  
FINDINGS OF FACT
  
1.On 
April 20 and 21, 2003, trial was held in the above styled and numbered cause.
 
2.The 
Court granted motion in limine regarding reference to or introduction of 
extraneous conduct alleged to have been committed by the Defendant to allow the 
Court to rule on its admissibility.
 
3.Officer 
Kelly Caruthers of the Fort Worth Police Department, testifying for the State 
during the case in chief, testified in response to the question “...initially 
when you went there, what type of information did you learn?”, the answer of 
the witness was “I went there originally with that other name, and she said 
she didn’t know him, and I left, and I found out that Kenneth had been to 
prison and changed his name. His original name was Kenneth Washington...” (R. 
II-165,166).
  
4.The 
defense timely objected, requested an instruction to disregard, and moved for a 
mistrial. The Court sustained the objection, gave the instruction to disregard 
and denied the motion for mistrial. The lawyers for the State, the Defendant, 
and the Court believed, based upon the totality of the circumstances, that the 
testimony of Officer Carruthers cited above, was inadvertent on the part of the 
witness. (R.II-166,167,168).
 
5.Later 
in his testimony, the following testimony was elicited from Officer Caruthers. 
“What did you do when you saw him in the car?” Officer Caruthers answered 
“I told him that I had a warrant for his arrest for the criminal mischief at 
5500...” The Defense timely objected and asked that the jury be instructed to 
disregard the testimony of the officer. The Court retired the jury, and after 
admonishing the State to make sure that the witnesses did not violate the motion 
in limine, denied the Defendant’s motion for mistrial. Again, the 
Defendant’s counsel told the Court that he believed Officer Caruthers 
testimony was inadvertent. (R. II-174, 175, 176).
 
6.There 
was no request for an instruction to disregard in the presence of the jury and 
no request for a mistrial in the presence of the jury by the Defendant.
 
7.Counsel 
for the Defendant additionally informed the Court that he believed that there 
was [not?] any intentional conduct whatever on the part of the State regarding 
the testimony of Officer Caruthers. (R. III-9).
 
8.Officer 
Raymond Wilson of the Fort Worth Police Department testified in the presence of 
the jury and the following testimony was elicited. “And for what purpose?” 
and the answer was “I was told that there was some possible identification 
located in the vehicle, wallet identification. Through a subsequent interview I 
was told that there may be narcotics in the vehicle.” (R. III-19).
 
9.Counsel 
for the Defendant timely requested a mistrial which was granted. (R. III-19)
 
 
CONCLUSIONS OF LAW
  
1. 
Federal law, pursuant to the holding of Oregon 
v. Kennedy, 456 U.S. 668, mandates that when a defendant in a criminal 
trial successfully moves for a mistrial, he may invoke the bar of double 
jeopardy in a second effort to try him only if the conduct giving rise to the 
successful motion for mistrial was prosecutorial or judicial conduct intended to 
provoke the defendant into moving for a mistrial.
  
2. 
The Texas Constitution prohibits a subsequent trial when the prosecutor caused 
the mistrial either intentionally or recklessly.
 
3. Ex Parte Bauder, 921 S.W.2d 696 (Tx. 
Crim. App., 1996) and Ex Parte Bauder, 
974 S.W.2d 729 (Tx. Crim. App., 1998) also state that the prosecutor is not 
accountable for mistrials when the trial judge need not have granted the 
defendant’s motion.
 
4. 
The testimony of Officer Caruthers was not presented by the prosecution in a 
manner to intentionally or recklessly cause a mistrial, nor done in any manner 
to deliberately or recklessly cross the line between legitimate adversarial 
gamesmanship and manifestly improper methods to render trial before the jury 
unfair.
 
5. 
The testimony of Officer Wilson was not presented by the prosecution in a manner 
to intentionally or recklessly cause a mistrial, nor done in any manner to 
deliberately or recklessly cross the line between legitimate adversarial 
gamesmanship and manifestly improper methods to render trial before the jury 
unfair.
 
6. 
The trial court need not have granted the defendant’s motion for mistrial 
based upon the totality of the record. The prosecution is not accountable for 
the trial court’s action.
 
7. 
The Defendant’s Writ of Habeas Corpus is DENIED.
 
 
DOUBLE JEOPARDY LAW
        Both 
the Double Jeopardy Clauses of the Fifth Amendment to the United States 
Constitution and Article I, section 14 of the Texas Constitution protect a 
criminal defendant from repeated prosecutions for the same offense. U.S. Const. amend. V; Tex. Const. art. I, § 14; Oregon v. 
Kennedy, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982); Ex parte 
Peterson, 117 S.W.3d 804, 810 (Tex. Crim. App. 2003). Although a defendant 
has a "valued right to have his trial completed by a particular 
tribunal," neither constitutional provision guarantees that the State 
"will vindicate its societal interest in the enforcement of the criminal 
laws in one proceeding." Oregon, 456 U.S. at 671-72, 102 S. Ct. at 
2087; Peterson, 117 S.W.3d at 810. Thus, double jeopardy principles do 
not forbid multiple trials of a single criminal charge if the first trial 
resulted in a mistrial that: 1) was justified under the manifest necessity 
doctrine; or 2) was requested or consented to by the defense, absent 
prosecutorial misconduct which forced the mistrial. Peterson, 117 S.W.3d 
at 810-11.
        It 
is this second prong—a mistrial requested by Appellant who asserts that he was 
compelled to do so because of prosecutorial misconduct—that is at issue in the 
present case. The underlying principle is that a mistrial which the defense 
freely chooses to request does not bar retrial. Id. A mistrial that the 
defense is compelled to request because of manifestly improper prosecutorial 
conduct may, under certain circumstances, bar retrial. Id.
        In 
Peterson, the Texas Court of Criminal Appeals set out the following 
three-pronged analysis to be employed by courts in analyzing a double jeopardy 
mistrial claim:
  
1) Did manifestly improper prosecutorial misconduct provoke the mistrial?
 
2) 
Was the mistrial required because the prejudice produced from that misconduct 
could not be cured by an instruction to disregard? And
 
3) 
Did the prosecutor engage in that conduct with the intent to goad the defendant 
into requesting a mistrial (Kennedy standard) or with conscious disregard 
for a substantial risk that the trial court would be required to declare a 
mistrial (Bauder standard)?
 
 
117 
S.W.3d at 816-17 (footnotes omitted).
        When 
raising a double jeopardy claim on a pretrial writ of habeas corpus, the 
applicant bears the burden of proof under a preponderance of the evidence 
standard. Id. at 818. Therefore, Appellant must satisfy all three prongs 
of the analysis set out above. See id.
        In 
reviewing the trial court’s decision to grant or deny habeas relief, we must 
review the facts in the light most favorable to the trial judge’s ruling and 
should uphold the decision absent an abuse of discretion. See id. at 819. 
We should afford almost total deference to a trial court's determination of the 
historical facts that the record supports, especially when the trial court's 
fact findings are based on an evaluation of credibility and demeanor. See id. 
We also afford that same level of deference to a trial court's ruling on 
application of law to fact questions, also known as mixed questions of law and 
fact, if the resolution of those ultimate questions turns on an evaluation of 
credibility and demeanor. See id. But appellate courts review de novo 
those mixed questions of law and fact that do not depend upon credibility and 
demeanor. Id. Although reviewing courts should also grant deference to 
“implicit factual findings” that support the trial court's ultimate ruling, 
they cannot do so if they are unable to determine from the record what the trial 
court's implied factual findings are. Id.
        A 
prosecutor’s conduct is not manifestly improper if it is the result of 
inadvertence, sloppiness, or even simple negligence. Id. at 817. A 
prosecutor's blunder that precipitates a successful motion for mistrial does not 
bar a retrial. Id. Prosecutorial misconduct reasonably reaches only that 
conduct which is qualitatively more serious than simple error and connotes an 
intentional flouting of known rules or laws. Id. at 816 n.55. If the 
prosecutor's conduct, viewed objectively, was not manifestly improper, then the 
double jeopardy inquiry ends at this first stage. Id. If, for example, 
the law itself is unsettled or the application of the law in the particular 
situation is debatable, the prosecutor's conduct cannot be said to be manifestly 
improper. Id.
        In 
Peterson, the court of criminal appeals explained that the proper inquiry 
is whether Appellant was “required to move for a mistrial because the 
prosecutor deliberately or recklessly crossed the line between legitimate 
adversarial gamesmanship and manifestly improper methods that rendered trial 
before the jury unfair to such a degree that no judicial admonishment could have 
cured it[.]” Id. at 816 (quoting Ex parte Bauder, 974 S.W.2d 
729, 732 (Tex. Crim. App. 1998)).
        Trial 
and appellate courts should focus primarily upon the objective facts and 
circumstances surrounding the events that led to the mistrial in deciding 
whether the prosecutor’s alleged misconduct was committed with the requisite 
intent or recklessness. Id. at 818. The court of criminal appeals 
provided some factors for trial and appellate courts to consider in assessing 
the prosecutor’s mens rea, including:
  
1) Was the misconduct a reaction to abort a trial that was “going badly for 
the State”? In other words, at the time that the prosecutor acted, did it 
reasonably appear that the defendant would likely obtain an acquittal?
 
2) 
Was the misconduct repeated despite admonitions from the trial court?
 
3) 
Did the prosecutor provide a reasonable, “good faith” explanation for the 
conduct?
 
4) 
Was the conduct “clearly erroneous”?
 
5) 
Was there a legally or factually plausible basis for the conduct, despite its 
ultimate impropriety?
 
6) 
Were the prosecutor's actions leading up to the mistrial consistent with 
inadvertence, lack of judgment, or negligence, or were they consistent with 
intentional or reckless misconduct?
 
 
Id. 
at 818-19.
DISCUSSION
Is the 
alleged misconduct of the witnesses imputed to the prosecution?
        In 
his first issue, Appellant asserts that the “gross misconduct” of the two 
police officer witnesses should be imputed to the prosecutors and constitutes 
prosecutorial misconduct which precludes retrial. In support of his contention, 
Appellant relies solely upon Ex parte Castellano, 863 S.W.2d 476 (Tex. 
Crim. App. 1993). The issue presented in Castellano was whether knowledge 
of a police officer’s perjured testimony could be imputed to the State. Id. 
at 481. The court of criminal appeals stated that the State violates a 
defendant’s right to due process 
when it actively or passively uses perjured testimony to obtain a conviction. Id. 
The court held that under the facts of the case, the police officer “acted 
under color of law and was, therefore, a member of the prosecution team in the 
investigation of the instant case and as such his knowledge of the perjured 
testimony was imputable to the prosecution.” Id. at 485; see also Ex 
parte Fierro, 934 S.W.2d 370, 372 n.2 (Tex. Crim. App. 1996) (“Due process 
prohibits prosecutors from presenting testimony that any member of the 
‘prosecution team,’ including both investigative and prosecutorial 
personnel, knows to be false.”), cert. denied, 521 U.S. 1122 (1997).
        We 
find Castellano clearly distinguishable from the instant case because 
that case dealt with whether the alleged improper conduct of the police officer 
was a violation of due process under the Fourteenth Amendment. The court of 
criminal appeals held that habeas relief was properly granted, and the case was 
remanded to the trial court for a new trial. Castellano, 863 S.W.2d at 
486. The case before us deals with an alleged violation of the Fifth Amendment 
which if proven would result in subsequent prosecution being jeopardy 
barred—this is significantly different from the claims raised in Castellano.
        Appellant 
has not cited us to any case dealing with the issue of whether the state of mind 
of a State’s witness could be imputed to the State so as to preclude further 
prosecution under the double jeopardy principles of the Fifth Amendment to the 
United States Constitution or Article I, section 14 of the Texas Constitution. 
Indeed, in its comprehensive briefing of this issue the State has not located 
any Texas case dealing with this legal issue. The State points out that every 
federal or state court that has addressed the issue of whether a witness’s 
state of mind should be attributed to the prosecution for the purposes of Fifth 
Amendment analysis has rejected such imputation.[3]
        Absent 
any persuasive authority or rationale for enacting such a rule in Texas, we 
decline to hold that the knowledge of a State’s witness may be imputed to the 
prosecution so as to constitute prosecutorial misconduct which would preclude 
retrial of a defendant under the Fifth Amendment to the United States 
Constitution or Article I, section 14 of the Texas Constitution when a claim of 
double jeopardy is raised following the trial court granting a mistrial. We 
overrule Appellant’s first issue.

Was there prosecutorial misconduct that violated State and Federal double 
jeopardy principles?
 
        In 
its findings of fact, the trial court found that the two complained-of comments 
by Officer Caruthers were inadvertent. We have thoroughly reviewed the 
complained-of trial testimony that resulted in the court granting a mistrial and 
the evidence from the writ hearing. While we certainly cannot condone any 
violation of a motion in limine by any witness, we agree with the trial court 
that the two comments by Officer Caruthers were inadvertent, as acknowledged at 
the time by the prosecutor, the trial judge, and 
Appellant’s own counsel at trial. Accordingly, these comments do 
not constitute a basis for barring retrial under double jeopardy principles.
        Detective 
Wilson’s testimony at trial presents a different scenario. He told the jury 
that “Through a subsequent interview I was also told that there may be 
narcotics in the vehicle,” referring to the vehicle alleged to have been 
driven by Appellant and that was involved in the hit-and-run accident. At the 
writ hearing, Wilson explained to the court that he made this statement because 
he intended to rebut what he anticipated would be Appellant’s alibi: that 
Appellant’s car had been stolen and therefore he couldn’t have been the 
driver involved in the hit-and-run accident, but that Appellant did not report 
his car as having been stolen because Appellant had drugs in the car. Detective 
Wilson testified that had he been permitted to fully explain his answer, he 
would have conveyed these facts to the jury and that he did not believe he was 
improperly testifying to extraneous or bad acts on the part of Appellant.
        Assistant 
District Attorney Rhoden testified at the writ hearing that in her pretrial 
meetings with Detective Wilson she had stressed that he should not mention any 
extraneous or bad acts committed by Appellant. However, she acknowledged that 
the issue of the identity of the driver of the hit-and-run car was hotly 
contested and was central to the State’s case against Appellant. Therefore, 
the issue of narcotics being in Appellant’s car was pivotal to the State’s 
case. Rhoden discussed this issue in detail with Wilson before trial and she 
anticipated that sometime during trial Wilson would testify regarding the reason 
he searched Appellant’s car for narcotics.
        Although 
Wilson acknowledged that he intentionally made his complained-of comment, having 
reviewed the explanations of Wilson and the prosecutors at the writ hearing, we 
conclude that Appellant did not meet his burden of establishing that any 
manifestly improper prosecutorial misconduct provoked the request for mistrial, 
that the mistrial was required because the prejudice produced from that 
misconduct could not be cured by an instruction to disregard, and that the 
prosecutor engaged in that conduct with the intent to goad Appellant into 
requesting a mistrial or with conscious disregard for a substantial risk that 
the trial court would be required to declare a mistrial. See Peterson, 
117 S.W.3d at 816-17. Accordingly, a subsequent retrial would not be barred 
under the Fifth Amendment to the United States Constitution or Article I, 
section 14 of the Texas Constitution. We overrule Appellant’s second and third 
issues.
CONCLUSION
        Because 
we have overruled all three of Appellant’s issues, we conclude the trial court 
did not err in denying the habeas corpus relief sought by Appellant. We affirm 
the judgment of the trial court.
  
   
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
 
 
PANEL 
B: HOLMAN, GARDNER, and McCOY, JJ.
 
PUBLISH
 
DELIVERED: 
June 23, 2005

 
NOTES
1.  
All emphasis in the quoted testimony in this opinion is supplied by the author.
2.  
The parties’ attorneys and the trial judge had previously been provided a copy 
of the reporter’s record from the trial on the merits. That record has been 
filed as a part of the appellate record in this appeal.
3.  
See United States v. Ford, 17 F.3d 1100, 1103 (8th Cir. 1994); United 
States v. McCevers, 731 F.2d 423, 431 (7th Cir. 1984); United States v. 
Green, 636 F.2d 925, 928-29 (4th Cir. 1980), cert. denied, 451 U.S. 
929 (1981); United States v. Cyphers, 553 F.2d 1064, 1068 n.1 (7th Cir.), 
cert. denied, 434 U.S. 843 (1977); State v. Barnes, 476 S.E.2d 
646, 647 (Ga. Ct. App. 1996); State v. Maddox, 365 S.E.2d 516, 517-18 
(Ga. Ct. App. 1988); People v. Walker, 720 N.E.2d 297, 299-301 (Ill. App. 
Ct. 1999), appeal denied, 731 N.E.2d 770 (Ill. 2000); State v. 
Wittsell, 66 P.3d 831, 837-39 (Kan. 2003); Commonwealth v. Deloney, 
20 S.W.3d 471, 474-75 (Ky. 2000); Commonwealth v. Mitchell, 410 A.2d 
1232, 1237 (Pa. 1980); Commonwealth v. Gravely, 404 A.2d 1296, 1298-1300 
(Pa. 1979); Commonwealth v. Johnson, 611 A.2d 1315, 1316-17 (Pa. Super. 
Ct. 1992); Commonwealth v. Yost, 451 A.2d 549, 550-52 (Pa. Super. Ct. 
1982); State v. Hopson, 778 P.2d 1014, 1018-19 (Wash. 1989). See also 
United States v. Parton, No. 96-5703, 1996 WL 733131, at *4 (6th Cir. 
Dec. 18, 1996) (not designated for publication); Berry v. Commonwealth, 
No. 2001-SC-0457-MR, 2003 WL 22415627, at *4 (Ky. Oct. 23, 2003) (not designated 
for publication). Cf. Commonwealth v. Arelt, 454 A.2d 108, 111-12 
(Pa. Super. Ct. 1982) (misconduct of victim’s family could not be imputed to 
prosecution); State v. Clements, 334 S.E.2d 600, 604-05 (W. Va.) 
(misconduct of sheriff’s department during trial not attributable to 
prosecution), cert. denied, 474 U.S. 857 (1985).